UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
**JEAN MAMAKOS,**
**CITIZENS FOR FAIR**
**HOUSING, INC.,**

                         Plaintiffs,          Case No. 16-CV-05775-SJF-GRB

            -against-

**TOWN OF HUNTINGTON,**
**HUNTINGTON TOWN BOARD,**
**comprised of FRANK P. PETRONE,**
**Supervisor, and MARK CUTHBERSON,**
**SUSAN A. BERLAND, EUGENE COOK,**
**and TRACEY A. EDWARDS,  of the**
**Town of Huntington, in their capacity**
**as Councilmen, and JOHN ROSE,**
**Interim Director of the Department of**
**Public Safety of the Town of Huntington**
**in his official capacity, DEPARTMENT**
**OF PUBLIC SAFETY of the Town of**
**Huntington, TERRANCE McNALLY,**
**Fire Marshall of the Town of Huntington**
**in his official capacity**

               Defendants.


-----------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS

                                RICHARD I. SCHEYER, ESQ. and
                                FREDRICK P. STERN, PC
                                *Attorneys for Plaintiff*
                                2163 Sunrise Highway
                                Islip, NY 11751
                                (631) 650-9260

TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................1

STATEMENT OF FACTS ....................................................................1

LEGAL STANDARD...........................................................................9

ARGUMENT.....................................................................................7

I.  THE PLAINTIFFS HAVE STANDING TO ASSERT THESE CLAIMS..............................10

II.  THE RENTAL PERMIT LAW VIOLATES THE FOURTH AMENDMENT......................11

III.  PLAINTIFFS HAVE STATED A DUE PROCESS CLAIM.................................22

CONCLUSION....................................................................................29

i
# TABLE OF AUTHORITIES
## FEDERAL CASES

**FEDERAL CASES**

*American Sugar Ref. Co. v. Louisiana*, 179 U.S. 89.................................................23

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...........9

*Atchison, T.& S.F.R. Co. v. Matthews*, 174 U.S. 96...............................................23

*Baker v. City of Portsmouth*, 2015 U.S. Dist. LEXIS 132759 *; 2015 WL 5822659
(S.D. Ohio 2015)................................................................................................17

*Baxstrom v. Herold*, 383, U.S. 107

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,127 S. Ct. 1955, 167 L. Ed.
2d 929 (2007)......................................................................................................9

*Camara v. Mun. Court*, 387 U.S. 523, 527, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)..............17

*Carrington v. Rash*, 380 U.S. 89 (1965)

*City of Los Angeles v. Patel*, 135 S.Ct. 2443, 192 L.Ed.2d 435 (2015) ........................17, 19, 20

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957).............................10

*Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309 (2d Cir. 2009)...............................9

*Club Italia Soccer & Sports Org. Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F. 3d 286
(6th Cir. 2006)....................................................................................................22

*Dolan v. City of Tigard*, 512 U.S. 687, 114 S.Ct. 2309 (1994)..................................28

*Hafez v. City of Schenectady*, 864 F.Supp.2d 207 (N.D.N.Y. 2012)............................11

*Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)...................10

*Koontz v. St. Johns River Water Management Dist.*, 133 S. Ct. 2586 at 2594 (2013)...............28

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 125 S. Ct. 2074, 161  L.Ed. 2d 876 (2005)..........28

*Louisville Gas Co. v. Coleman*, 277 U.S. 32, 37, 48 S.Ct. 423, 72 L.Ed. 770 (1928)..............23

*MacPherson v. Town of Southampton*, 2013 WL 6058202 (E.D.N.Y. 2013)..........................16

*Marshall v. Barlows, Inc.*, 98 S. Ct. 1816, 436 U.S. 307 (1978)................................17

*Mangino v. Inc. Village of Patchogue*, 739 F.Supp.2d 2015 (E.D.N.Y. 2010).....................11

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) .........................................9

*McLaughlin v. Kings Island, Div. Of Taft Broadcasting Co.*, 849 F.2d 990 (6th Cir. 1988).......28

*McLaughlin v. State of Florida*, 379 U.S. 184, 189-190 (1964)..................................22

*Norton v. Town of Islip*, 239 F. Supp. 2d 264, 2003 U.S. Dist. LEXIS 3 (E.D.N.Y. 2003).......27

*Palmieri v. Town of Babylon*, 2006 WL 1155162 (E.D.N.Y. 2006), aff'd 277
Fed.Appx. 72 (2d Cir. 2008)................................................................................15

*Pashcow v. Town of Babylon*, 53 N.Y.2d 687, 439 N.Y.S.2d 103 (1981).............................14

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.
   Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) ..........................9

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).........................22

*Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983)......................27

*Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560,
64 L.Ed. 989 (1920)...........................................................................................23

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc. *, 547 U.S. 47, 59-60 (2006)....27

*Rutan v. Republican Party of Ill*, 497 U.S. 62, 78, 110 S.Ct. 2729 (1990)......................27

*Spiteri v. Russo*, 2013 U.S. Dist. LEXIS 128379, 2013 WL 4806960 ..........................9, 27

**FEDERAL CASES (cont'd.)**

*Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).......................10

*United States v. Jones*, 132 S.Ct. 945 [2012])..................................................................13

*Wisoff v. City of Schenectady*, 2015 WL 6509759 (N.D.N.Y. 2015)........................................14

**STATE CASES**

*American Ind. Paper Mills Supply Co., Inc. v County of Westchester*, 65 AD3d 1173,
886 NYS2d 178 (2009)......................................................................................................20

*Arrowsmith v City of Rochester*, 309 AD2d 1201, 765 NYS2d 130 [2003])............................20

*ATM One, LLC v Incorporated Vil. of Hempstead*, 91 A.D.3d 585, 936 N.Y.S.2d 263
(N.Y. App. Div. 2d Dep't 2012) ........................................................................................20

*Dunham v Hilco Constr. Co.*, 89 NY2d 425, 676 NE2d 1178, 654 NYS2d 335 (1996)............21

*Lighthouse Shores v Town of Islip*, 41 NY2d 7, 11, 359 NE2d 337, 390 NYS2d 827 [1976]....20

*McCrone v. Bank One Corp.*, 107 Ohio St. 3d 272......................................................................23

*Pashcow v Town of Babylon,* (53 NY2d 687, 421 NE2d 498, 439 NYS2d 103 [1981])............21

*Sokolov v. Village of Freeport*, 52 N.Y.2d 341, 420 N.E.2d 55, 438 N.Y.S.2d 257
(N.Y. 1981)..........................................................................................................18, 20, 21

*Town of Brookhaven v Ronkoma Realty Corp.*, 154 AD2d 665, 666, 547 NYS2d 68 (1989).....21

*Wilson v. City of Cincinnati*, 46 Ohio St. 2d 138, 346 N.E.2d 666 (Ohio 1976)........................19

*Wisoff v. City of Schenectady*, 116 A.D.3d 1187, 984 N.Y.S.2d 207 (2014), *app. dismissed*,
23 N.Y.3d 1012 (2014).....................................................................................................14

**STATUTES AND RULES**

Babylon Town Code Section 153-9.....................................................................................16

Federal Rule of Civil Procedure 12(b)(6)..........................................................................8, 9

NYS Penal Law Section 210.45.........................................................................................13

Huntington Residential Rental Permit Code of the
(Chapter 160, §160-1, *et seq.*)............................................................. 2-7, 12-13, 15, 23-25

Huntington Abandoned House Registration Code Section 160-13(A)................................... 3, 4

Los Angeles Municipal Code Section 41.49........................................................................17

Southampton Town Code Section 270.................................................................................16

U.S. Const. Amend. IV...............................................................................11, 14-15, 17-22, 25

U.S. Const. Amend. V........................................................................................................27

U.S. Const. Amend. IX.......................................................................................................25

U.S. Const. Amend. X........................................................................................................25

U.S. Const. Amend. XIV......................................................................................11, 18, 22, 27

Village of Hempstead Code § 106-3...................................................................................20

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs, Jean Mamakos and Citizens for Fair Housing, Inc., (sometimes referred to herein as "Mamakos" or "Citizens" and collectively referred to herein as "Plaintiffs"), in opposition to the motion by the Defendants, TOWN OF HUNTINGTON, HUNTINGTON TOWN BOARD, JOSEPH ROSE, Interim Director of the Department of Public Safety and TERRANCE McNALLY, Town Fire Marshall, in their official capacities (collectively referred to herein as "the Town") to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion to Dismiss").

Contrary to the arguments set forth by the Town that the complaint is without merit because the Residential Rental Permit Code of the Town of Huntington (Chapter 160, §160-21, *et seq*.) (the "Code") which is challenged as unconstitutional by the Plaintiffs is substantially identical to similar rental permit codes from other municipalities that have been upheld as constitutional by this Court, the Code that is the subject of this action is not only overly broad but also dissimilar to the statutes which have been upheld. Additionally, recent Supreme Court and controlling Appellate Division, Second Department case law clearly supports Plaintiffs' claim that this statute is unconstitutional. Accordingly, the Motion to Dismiss should be denied in its entirety.

In the event that this Court finds the Complaint fails to contain the requisite pleading requirements, it is respectfully submitted that Plaintiffs be granted leave to replead.

## STATEMENT OF FACTS

Mamakos is an owner of real property located in the Town of Huntington, County of

Suffolk, State of New York (the "Mamakos Property")(¶5)[1].  Mamakos owns rental homes

(among other properties) at 39 East Carver Street, Huntington, New York, which is currently the

subject of a valid rental permits and property at 192 Nassau Road, Huntington, New York, each

one of which is subject to the Code.(¶6).  The Code was amended and enacted on May 10, 2016.

The earlier version of the Code was in effect until 2015. (¶13).  The Code intrudes on the tenants'

right of privacy, mandating that inspections must be done prior to any renewal of the permit.

(See, Section 160-27).

Citizens is a Not-for-Profit Corporation formed pursuant to Section 402 of the Not-for-

Profit Law of the State of New York.   The purpose of the corporation is to defend and preserve

the legal rights of landlords in the Town of Huntington, New York, among others, the rights of

each and every one of the 15  members of the corporation are property owners who rent

properties in the Town of Huntington subject to the Code and represent at least 30 rental

properties.  The majority of the members of Citizens have paid rental inspection fees to the Town

of Huntington. (¶7).

The Code mandates that, unless the property qualifies under one of the many

exemptions articulated in Section 160-21, "residential premises within the Town owned for

rental purposes or occupied by a party other than the owner .......shall require a rental dwelling

permit from the Town, Section 160-22. (¶14).

Residential property is defined in Section 160-21 of the Code as follos:

> "Dwelling unit(s) in one and two family homes, multiple
> residences, dormitories, and mixed-use occupancy buildings in any
> zoning district which are occupied for habitation as a residence by

---

[1]All paragraphs referred to the Complaint filed on October 17, 2016.

persons other than the owner or the owner's immediate family, and for which a fee or other compensation is received by the owner or managing agent, directly or indirectly, in exchange for such residential occupation. The term 'rental property' shall exclude properties used solely for nonresidential purposes; one family homes which continue to be the primary and permanent residence of the owner but are leased or occupied by one other than the owner or owner's immediate family for six (6) months or less in any calendar year; two-family homes where the owner or a member of the owner's immediate family resides in one of the two dwelling untis; legal habitable dwellings detached from the main residence of the owner or owner's immediate family on the lot; multiple dwellings where the owner or owner's immediate family reside on site; large multiple residence developments or communities having approved bylaws and a homeowner's association, board or similar management or organization on-site with jurisdiction over rental property; those having valid accessory apartment permits..." (See relevant portions of Town Code attached to Affirmation of James P. Clark submitted with the Motion to Dismiss).

Section 160-25 of the Code requires that "before the property or dwelling unit is advertised for rent" the owner shall not only apply for a rental permit but must include the rental permit number in the advertisement. In the event the property is not advertised, the rental permit must be applied for prior to the property being "leased or occupied".

Section 160-25 further contains a list of nine items, including the relevant deed, survey, proof of residency of each owner with picture ID, location of the premises and a floor plan as well as "such other information and/or documentation deemed necessary by the Director of Public Safety". While the Code prevents the advertising, leasing or occupying of any rental property without a rental permit, the Code requires "a signed and notarized certification in a form acceptable to the Director of Public Safety by each property owner or managing agent attesting to the total number of persons occupying each rental property or rental unit owned or managed by the registrant as of the date of registration".

Section 160-25 also requires that the applicant for a rental permit provide "the information set forth in Section 160-13(A) as is applicable in the discretion of the Director of Public Safety, and Section 160-13(B)". Section 160-13 requires that any "vacant and abandoned buildings, structures and dwellings in the Town of Huntington" which have been "vacant for more than one hundred and twenty (120) consecutive days" shall be registered with the Department of Public Safety.[2]

Section 160-26 conditions the issuance of a rental permit on the following:

> "(D)(1) No permit or renewal thereof shall be issued unless the property is in compliance with all of the provisions of the Code of the Town of Huntington, and meets the requirements of all applicable county, state and federal laws, codes and rules and regulations.
> (2) No permit or renewal thereof shall be issued unless the property owner provides a certification from a professional engineer or registered architect licensed in the State of New York and containing their seal, or the certification of a Town ordinance/code enforcement officer, or of an independent state certified code enforcement official, attesting that the property at issue is in compliance with the Huntington Town Code, and meets the requirements of all applicable county, state and federal laws, codes, rules and regulations. Nothing in this article, except in the case of an emergency pursuant to §160-48(C), shall be deemed to authorize the Town to conduct an inspection of any property without the consent of the owner or managing agent, if the dwelling unit or units are unoccupied, and if occupied, upon the consent of the occupant, owner or managing agent of the property in the absence of a warrant duly issued by a court of law."

Section 160-27 allows for the renewal of a permit only "by application to the Department of Public Safety as in the case of an original permit application, with payment of a non-refundable application fee of twenty-five ($25) dollars and ***the production of any documents***

---

[2]See Section 160-13 of the Code attached for the Court's convenience as Exhibit A to the Affirmation of Fredrick P. Stern, submitted herewith.

4

*deemed necessary by the Director.*"

Under the Code a rental permit may only be issued to property owners after the home at issue has undergone an initial inspection. Renewal permit applications require that a re-inspection be performed at least every two years. (See Section 160-24).

Further, the Code requires that either Town Officials or a third party Engineer, Architect or certified code enforcement officer (the "Third Party Agent") conduct a full inspection of a rental home either prior to the issuance of a rental permit, when the existing permit requires renewal, or if the Town has reason to believe that a violation of the Code may exist[3]. (¶17). During these inspections, Town Inspectors or Third Party Agents may search for evidence that can result in criminal charges. (See Inspection Report, Exhibit B). Evidence adduced through inspection can further result in "suspension" of the permit to rent the property. (See, Section 160-36).

The Code states that the party conducting the inspection must certify that the rental property at issue complies with all Town, County, State and Federal Regulations of any kind whatsoever. (See, Section 160-26 D(2)). As to the scope of the rental inspections, the Code alludes to an Inspection Report which contains 60 questions that the Third-Party Agents must fully certify to the satisfaction of the Town. (¶21). The Checklist to which the Third-Party Agents must certify compliance by the rental property owners includes items such as: the height of the grass, the condition of the roof, drains, walls, fences, plumbing fixtures, entrances, rails, alternate decks, swimming pools, doors, room sizes, floor plans, photographs (interior and

---

[3]Pursuant to Section 160-23 which contains a list of 12 presumptive theories that the property is being rented.

exterior) in addition to numerous other requirements of the Director of Public Safety as he may require pursuant to Section 160-25 of the Code. (¶22). The Checklist makes clear that a thorough search is to be made of the interior and exterior of the premises including "Common Egress Corridor, Interior, Kitchen, Hallways, Laundry, Basement, Bedrooms, Bathrooms" as well as other items. (¶23).

The Town of Huntington Office of the Fire Marshall and the Department of Public Safety are charged with implementing the Residential Permit Code and/or enforcing the Code. (¶26).

Pursuant to Code §160-49(A) "a violation of Article III of this Chapter shall be punishable by a fine or penalty of not less than one hundred and fifty ($150) dollars nor greater than seven hundred fifty ($750) dollars, a conviction of a second offense, within a period of five (5) years of the first conviction, shall be punishable by a fine or penalty of not less than seven hundred and fifty ($750) dollars nor greater than one thousand five hundred ($1,500) dollars; and a conviction of a third or subsequent offense, within a period of five (5) years of the second conviction, shall be punishable by a fine or penalty of not less than one thousand five hundred ($1,500) dollars nor greater than two thousand five hundred ($2,500) dollars. Each week or part thereof the violation continues shall be deemed a separate and distinct offense punishable in like manner" and "(B) In addition to the criminal penalties set forth herein or in other applicable law, rule or regulation, the Town Attorney is authorized to pursue civil and equitable relief, including but not limited to compensatory actions; civil penalties in the amount of up to five hundred ($500) dollars per day, or any part thereof; an action to compel compliance with or to restrain by injunction the violation of this chapter; and other remedies which in the opinion of the Town Attorney may seem necessary and proper."

Moreover, Section 160-49(D) allows that "any person or occupant of rental properties aggrieved by the actions of the owner or other person violating the provisions of this chapter may assert his or her own cause of action to recover rental payments advanced, or such other relief as may be permitted by law" against any person in violation of the Code with regard to that rental property.

Not only are owner and/or managing agents of rental properties subject to the above penalties, but "any engineer, architect or other consultant including an independent state certified code enforcement official who generates a certification or other document for filing pursuant to this chapter containing false or misleading statements or information; or generates a certification without entering into and/or inspecting **_all_** portions of the rental property, shall be deemed to be in violation of this article." There is no *mens rea* requirement with regard to the filing of a "false" statement. (See, Section 160-22). The Code provision subjects the Third Party Agent to criminal and civil responsibility if they do not certify that all codes of the Town, County, State and Federal Government have been complied with on each site they inspect, which has made it exceedingly difficult to obtain such searches and is designed to compel the property owners to have the Town inspectors perform the warrantless searches. (¶60).

There is no allegation that the Plaintiffs do not possess valid certificates of occupancy for the rental properties or that, in many cases, the certificates of occupancy issued for some or all of the rental properties pre-date existing Town of Huntington and state building code requirements. In most cases, Plaintiffs' use of their properties as rental properties pre-existed the implementation of the Code. (¶44).

Mamakos and the majority of the members of Citizens have paid rental inspection fees to

7

the Town of Huntington pursuant to the requirements of the Code (¶7, 33). In many cases rental property owned by Mamakos and members of Citizen has been inspected pursuant to the Code at least once by the Town of Huntington in 2015-2016. (¶39). After the Initial Inspections the Town had no knowledge of any risk of public or private harm which may have existed on any of the Plaintiffs' rental properties. (¶46). None of the Plaintiffs voluntarily consented to the searches of any of their rental properties which were performed pursuant to the Code. (¶50).

Upon information and belief, no tenant or neighbor of any of the Plaintiffs has ever complained to the Town regarding code violations or other nuisances at any of these properties, or by any of the Plaintiffs at other properties. Meanwhile, Plaintiffs maintain that there are no conditions at any of these rental properties that would give rise to the need for an emergency entry into those properties, or vest the Town with probable cause to believe that any Plaintiffs' rental properties maintain an interior code violation or other nuisances at this time. (¶53, 54). Each Plaintiff is contractually and statutorily obligated to provide their tenants with a fit and habitable property, free from any nuisances and/or other dangerous conditions, and understands and abides by these terms. (¶56).

None of the Plaintiffs are currently in violation or has ever been found to be in violation of their contractual or statutory obligations. These Plaintiffs are, by all accounts, model property owners and landlords. (¶57, 58).

Due to the revisions to the Code in May, 2016, some or all of the Defendants will be required to either have the Town or Third Party Agents conduct warrantless searches within all of their rental properties. (¶59). Plaintiffs now intend to refuse all further efforts by the Town to inspect their rental properties or to collect fees from them to fund the inspections of their

8

properties and others under the Code. As a consequence of this abstention, each Plaintiff is in imminent risk of facing criminal charges and/or loss of their property rights in response to this assertion of their Fourth and Fourteenth Amendment rights. (¶51, 52).

## **LEGAL STANDARD**

The Town moves this Court to dismiss the Complaint pursuant to Rule 12(b)(6) based upon its' claim that the Code section has been "repeatedly and consistently upheld" and, as a result, argues that Plaintiffs' claims lack merit

"In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must take all of the factual allegations in the complaint as true." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)); see also *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must "contain sufficient factual [29] matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678); see also *Pension Ben. Guar. Corp.*, 712 F.3d at 717-18. (See, *Spiteri v. Russo, supra.*)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is viewed with disfavor and is rarely granted. A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond a doubt that

9

the plaintiff can prove no set of facts in support of their claim which would entitle to them to relief." *Conley v. Gibson*, 355 U.S.41, 45-46, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957). Stated another way, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be consistent with the allegations. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## ARGUMENTS

### I. THE PLAINTIFFS HAVE STANDING TO ASSERT THESE CLAIMS

While the Town argues that this action should be dismissed due to an alleged lack of standing on the part of Plaintiffs, the Town concedes that the Plaintiffs could potentially lack standing only "to the extent that such properties are, in fact, occupied by tenants."

The Town has submitted no evidence whatsoever as to which, if any, of the Plaintiffs' rental properties are currently tenanted. Nor has the Town provided any evidence that some portions of the rental properties which are tenanted do not remain under the exclusive control of the Plaintiffs. Moreover, the Code itself prevents the initial leasing of any rental property until after a warrantless search has been conducted by either the Town or the third party agent, which, effectively, means that the Plaintiffs have standing to bring a Fourth Amendment challenge with regard to these initial searches.

The cases relied upon by the Town support Plaintiffs standing, and not the Town's argument to the contrary. In *Hafez v. City of Schenectady*, 864 F.Supp.2d 207, 220 (N.D.N.Y. 2012) that Court does nothing more than cite to *Mangino v. Inc. Village of Patchogue*, 739 F.Supp.2d 2015, 234 (E.D.N.Y. 2010). Yet, in *Mangino* this Court found that the Plaintiff had

standing as to those portions of the Plaintiff's property which were not tenanted and over which he maintained control.

## II. THE RENTAL PERMIT LAW VIOLATES THE FOURTH AMENDMENT

Plaintiffs have met their burden of establishing that the inspection of the property performed by the Town or a Third Party Agent prior to the issuance of a rental permit constitutes a violation of their Fourth and Fourteenth Amendment right against warrantless searches. Moreover, the cases relied upon by the Town, which they allege uphold rental inspection requirements similar to those contained in the Code, are wholly dissimilar inasmuch as those cases which upheld rental permit inspections not only required that such inspections be performed only with the consent of the property owner or a warrant, but the statutes upheld in those cases were significantly less onerous and burdensome than the Code sections at issue.

**Search and Seizure Clause**

The Town's claim that a property owner is not required to submit to a warrantless search because they can opt to have the inspection performed by either a professional engineer or architect, a Town ordinance/code enforcement officer, or an independent state certified code enforcement official is deceptive and attempts to paint this as a "choice" where, in fact, none exists.

While the Code provides that the required inspection could be performed by someone other than a representative of the Town, the Town has made certain, by subjecting such Third Party Agents to onerous penalties, including criminal violations, they have, in practice, precluded most architects and engineers from undertaking such inspections since:

1) The Code requires that if an architect or engineer perform the inspection that they

provide a "certification...containing their seal...attesting that the property at issue is in compliance with the Huntington Town Code, and meets the requirements of ***all applicable*** county, state and federal laws, codes, rules and regulations." There is no explanation as to what county, state and federal laws, codes, rules and regulations are "applicable" under the Code. Nor is it possible that an architect/engineer could be cognizant of every county, state and federal law, code, rule or regulation which may potentially be "applicable" to each individual rental property.

2) There is no *mens rea* requirement for filing a "false" document under Section 160-22 of the Code. Simply by filing a certification which may contain a "false" statement, the architect or engineer has violated the Code rendering the architect/engineer liable for a certification as to items which may, ultimately, have been unknown to him but later discovered to be "false" such as hidden plumbing, heating and electrical issues which may not have been in compliance with the Huntington Code or any state code, rules or regulation. Similarly, a dwelling which may be determined to have a health hazard which fails to comply with federal regulations, such as asbestos or lead, could potentially lead to liability for an architect or engineer who filed a certification attesting to the fact that it was in compliance.

3) The Report and Information which must be completed by the architect/engineer requires them to inspect each and every aspect of the exterior and interior of the rental property and determine whether said property complies with approximately 60 requirements under the Huntington Code, separate and apart from the Huntington Building Code, including that the property is "free from litter & debris, grass & weeds do not exceed 10 inches, fences in good repair", etc. Th architect/engineer must take pictures of each section of the home delineated in the Report (19 in all) and include them with the Report. Once completed that architect/engineer

must "PASS" or "FAIL" the rental property and certify that he/she "personally completed all 19 sections of this form". The Information contains a warning that :

"FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW OF THE STATE OF NEW YORK"[4].

(See Exhibit B annexed to Plaintiff's Complaint).

4) If the Town later determines that there was a Code violation and the architect/engineer certification contained a false statement in violation of Section 160-22 of the Code, the architect/engineer could be subject to continuing civil penalties, civil and equitable relief as determined by the Town Attorney, or a cause of action to recover rental payments advanced by any tenant of the Real Property. (See, Section 160-49).

Moreover, by requiring the architect/engineer to advise the Town of any code violations, simply by checking "NO" on the checklist and submitting an Information marked "FAIL", the architect/engineer is acting as an informant to the Town as to any Huntington Town Code violations which may be present at the rental property. Having the architect/engineer performs these inspections as the "eyes and ears" of the Code Enforcement officials is nothing more than an end-run around the Fourth Amendment. (When "Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has undoubtedly occurred. *United States v. Jones*, 132 S.Ct. 945, 950-951 [2012]).

In support of its' contention that the Code complies with the warrant requirements of the

---

[4]Under New York State Law a person found guilty of violation Section 210.45 of the Penal Law could be sentenced to a term of imprisonment of not more than one year.

Fourth Amendment, the Town cites *Wisoff v. City of Schenectady*, 2015 WL 6509759 (N.D.N.Y. 2015) to support it's claim. However, the Rental Ordinance upheld by the District Court in *Wisoff* bears little relation to the Code provisions at issue herein.

In that case, the Rental Ordinance held that a Building Inspector could inspect the rental unit to determine if the rental unit is in compliance with applicable standards and, in the event the owner or tenant refused entree to the Building Inspector, "the Building Inspector ***shall*** apply for a search warrant or court order in an appropriate court showing that there is reasonable grounds to believe that a building or rental unit within a building is rented and occupied in violation of this article".

As the Appellate Division, Third Department held in the *Wisoff* state court companion case, "the court noted that where an ordinance 'directly or in practical effect authorizes or requires a warrantless inspection it will not pass constitutional muster[5]."

Likewise, the Court of Appeals held in *Pashcow v. Town of Babylon*, 53 N.Y.2d 687, 439 N.Y.S.2d 103 (1981) that a similar rental ordinance which required consent or a warrant was not "unconstitutional on its' face".

Here, however, there is no provision that a Huntington Code Enforcement Officer must seek a warrant if the owner/tenant refuses to allow him entry into the rental property. Instead, the Town compels the owner/manager to consent to an involuntary search of the rental property which the *Wisoff* Court held "will not pass constitutional muster".

While Section 160-48 of the Code authorizes the Town ordinance/code enforcement

---

[5]*Wisoff v. City of Schenectady*, 116 A.D.3d 1187, 984 N.Y.S.2d 207 (2014), *app. dismissed*, 23 N.Y.3d 1012 (2014).

14

officer to make application to any court...for the issuance of a search warrant in order to conduct an inspection of any premises covered by this chapter where the owner or managing agent or occupant fails or refuse to allow an inspection of the rental property, *and where there is reasonable cause to believe that a violation of this chapter has occurred*, there are two problems with this section.

First, unlike the Town of Babylon rental law which mandated that such a warrant be applied for by use of the word "shall" in that code, the Code herein leaves it to the discretion of the Town ordinance/code enforcement officer which would allow the rental permit application to remain in limbo if the property owner refuses to consent and the code enforcement officer elects not to seek a warrant. Secondly, in the instance of an initial inspection prior to the leasing of a rental property or a renewal application where the previous tenant has already vacated the rental property, there is no "reasonable cause to believe that a violation of this chapter has occurred" thereby preventing the Town ordinance/code enforcement officer from making application to any court for a warrant to inspect. In those instances, only an involuntary search of the rental property can be conducted, rendering the Code in violation of the Fourth Amendment in those instances.

The Town's reliance on *Palmieri v. Town of Babylon*, 2006 WL 1155162 (E.D.N.Y. 2006), aff'd 277 Fed.Appx. 72 (2d Cir. 2008) and it's claim that "the law in question in *Palmieri* was similar in all material respects to the Huntington Town Code being challenged in the present case" is ludicrous inasmuch as there was no inspection requirement in order to obtain the rental

permit under the Babylon Town Code[6]. Instead, that law required only that the owner apply in writing for a permit "and provide a certification that the subject Property complies 'with all the provisions of the Code of the Town of Babylon'".

The Town further argues that the Code is similar to the New Seasonal Rental Law of the Town of Southampton which was upheld by this Court in *MacPherson v. Town of Southampton*, 2013 WL 6058202 (E.D.N.Y. 2013). However, that Rental Law is not as onerous as the Code herein in that the owner in Southampton need only provide a "written certification from a licensed architect or licensed engineer that states that the rental property fully complies with all of the provisions of the Code of the Town of Southampton. The certification shall include, but not be limited to, the number of bedrooms, the square footage of each bedroom, and a description of every improvement indicated on the survey. In lieu of the provision of a certification, an inspection may be conducted by the enforcement authority." Moreover, there are no penalties imposed upon the architect/engineer for filing a "false" certification. (See relevant provisions of Southampton Town Code Section 270 annexed to the Affirmation of Fredrick Stern as Exhibit "B").

In fact, each and every case relied upon by the Town required either consent of the owner or the procurement of a search warrant by the requisite building official, contrary to the situation here where such a warrant is discretionary and, in many instances, unauthorized.

Moreover, all of these cases were decided prior to *City of Los Angeles v. Patel*, 135 S.Ct.

---

[6]Section 153-9 of the Babylon Town Code authorizes the Building Inspector of the Town of Babylon "to make application to the District Court for the issuance of a search warrant in order to conduct an inspection of any premises...where the owner refuses or fails to allow an inspection of its rental premises and where there is reasonable cause to believe that a violation of this article has occurred.

2443, 192 L.Ed.2d 435 (2015) wherein the Supreme Court held that Section 41.49 of the Los

Angeles Municipal Code, which required hotel operators to record and keep specific information

about their guests for a 90-day period and to make said lists available to the Police Department

for inspection without a warrant was held unconstitutional for violating the Fourth Amendment

prohibition against warrantless searches. In so finding, the Court opined that "searches outside

the judicial process...are *per se* unreasonable subject only to a few...exceptions".

In *Marshall v. Barlows, Inc.*, 98 S. Ct. 1816, 436 U.S. 307 (1978), the Supreme Court

held that "for <u>warrantless</u> searches to be justifiable under a regulatory scheme, the object of the

search must be something that can be <u>quickly hidden</u>, moved, disguised, or altered beyond

recognition, so that only a surprise inspection could be expected to catch the violations. On the

other hand, if a regulation is <u>similar to a building code</u>, where violations will be harder to

conceal, the need for surprise will be less pressing, and warrantless searches will more likely be

unconstitutional.

In *Baker v. City of Portsmouth*, 2015 U.S. Dist. LEXIS 132759 *; 2015 WL 5822659

(S.D. Ohio 2015), that Court held that:

> "The Fourth Amendment provides that "[t]he right of the people to be
> secure in their persons, houses, papers, and effects, against unreasonable searches
> and seizures, shall not be violated, and no Warrants shall issue, but upon probable
> cause, supported by Oath or affirmation, and particularly describing the place to
> be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The
> basic purpose of this Amendment... is to safeguard the privacy and security of
> individuals against arbitrary invasions by government officials." *Camara v. Mun.
> Court*, 387 U.S. 523, 527, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). The Supreme
> Court has repeatedly held that "searches conducted outside the judicial process,
> without prior approval by a judge or a magistrate judge, are per se unreasonable
> subject only to a few specifically established and well delineated exceptions." *City
> of Los Angeles v. Patel*,    U.S.    , 135 S.Ct. 2443, 2452, 192 L. Ed. 2d 435
> (2015). See also *Camara*, 387 U.S. at 528-29 (1967) (noting that "except in

17

certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant"). This rule, which applies to the states via the Fourteenth Amendment, is applicable to both commercial premises as well as private homes. See *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978).

In *Camara*, the Supreme Court held unconstitutional a San Francisco building ordinance which permitted warrantless, unconsented inspections to enforce the city's housing code. As in the instant case, failure to consent to the warrantless, administrative searches authorized by the ordinance was punishable as a misdemeanor. *Camara*, 387 U.S. at 527 n.2. The case arose after an apartment building tenant refused an annual inspection and was charged for failure to comply. Id. After finding that the administrative searches constitute significant intrusions upon the interests protected by the Fourth Amendment, the *Camara* Court held "that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards with the Fourth Amendment guarantees to the individual." Id. at 534. The Court reasoned:

Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the full limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. These are questions which may be reviewed by a neutral magistrate without any reassessment of the basic agency decision to canvass an area. Yet, only by refusing entry and risking a criminal conviction can the occupant at present challenge the inspector's decision to search. . . . The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search. . . . We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty. Id. at 533. The Court found that the appellant (the apartment building tenant) had a constitutional right to insist that the administrative search be supported by a warrant and that he could not constitutionally be convicted for refusing to consent to the inspection. Id. at 540.

In *Sokolov v. Village of Freeport*, 52 N.Y.2d 341, 420 N.E.2d 55, 438 N.Y.S.2d 257 (N.Y. 1981), the Court of Appeals of New York applied the principles of *Camara* to a rental ordinance substantially similar to the Portsmouth RDC in this case. As here, the challenged ordinance required that landlords obtain a rental permit prior to leasing their property, which required an inspection of the rental property a nd a penalty for failure to comply—a fine of $250 was levied for each day a rental property was occupied without a permit. Id. at 343-44. The court held that the rental permit ordinance was unconstitutional "as it effectively authorizes and, indeed, requires a warrantless inspection of residential rental

property." Id. at 346. In reaching its holding, the court rejected the argument that because the ordinance punished renting without a permit, as opposed to the failure to consent to a search, any inspections under the ordinance was conducted with the consent of the owner. The court noted, "[a] property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property." Id.

The Ohio Supreme Court reached a similar conclusion in *Wilson v. City of Cincinnati*, 46 Ohio St. 2d 138, 346 N.E.2d 666 (Ohio 1976). In that case, the court considered a challenge to a Cincinnati ordinance requiring that a property owner obtain a Certificate of Housing Inspection prior to entering into a contract for the sale of property. Id. at 670. Under the ordinance, the seller of the home could obtain a certificate only by agreeing to a search of the home and, with limited exception, failure to obtain a certificate prior to sale subjected the seller to criminal prosecution. Id. The Ohio Supreme Court found the ordinance unconstitutional, noting that "the import of *Camara* is that the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty." Id. at 671.

Finally, most recently in *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 192 L. Ed. 2d 435 (2015), the Supreme Court entertained a Fourth Amendment challenge to a city ordinance requiring hotel operators to provide hotel guest records to the police on demand. The ordinance contained no warrant provision, and failure to comply with the inspection was punishable as a misdemeanor. Id. at 2448. The Court found the administrative search regime facially unconstitutional because it penalized hotel owners for declining to produce their records without affording the opportunity for precompliance review. Id. at 2446. In doing so, the Court reaffirmed that "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." Id. at 2452. However, the Court held only that the hotel owner be afforded an opportunity to have a neutral decisionmaker review the search demand before being subject to penalties for failure to comply, noting that an actual review only need to take place when the hotel operator objects to the inspection.4 Id. at 2453 (emphasis in original).

Guided by the above cases, the Court finds that the Portsmouth RDC violates the Fourth Amendment insofar as it authorizes warrantless administrative inspections. It is undisputed that the RDC affords no warrant procedure or other mechanism for precompliance review. As in the above cases, the owners and/or tenants of rental properties in Portsmouth are thus faced with the choice of consenting to the warrantless inspection or facing criminal charges, a result the Supreme Court has expressly disavowed under the Fourth Amendment. See *Camara*, 387 U.S. at 532. See also *Patel*, 135 S.Ct. at 2452 ("A hotel owner who

refuses to give an officer access to his or her registry can be arrested on the spot. The Court has held that business owners cannot reasonably be put to this choice."). Therefore, unless a recognized exception to the warrant requirement applies, the Code's failure to include a warrant provision violates the Fourth Amendment".

Likewise, in *ATM One, LLC v Incorporated Vil. of Hempstead*, 91 A.D.3d 585, 936 N.Y.S.2d 263 (N.Y. App. Div. 2d Dep't 2012) Village of Hempstead Code § 106-3, which required a site inspection of "each rental dwelling unit" located in the Village, was declared unconstitutional by the Appellate Division, Second Department. In that case, which involved a similar rental permit law[7] to the Code provision at issue, the plaintiffs, who were owners or landlords of rental dwelling units in the Village, commenced that action seeking injunctive relief and a declaration that chapter 106 is unconstitutional. In reversing the lower court which had declared the statute constitutional, the Appellate Division, Second Department held:

> "Legislative enactments are entitled to an "exceedingly strong presumption of constitutionality" (*Lighthouse Shores v Town of Islip*, 41 NY2d 7, 11, 359 NE2d 337, 390 NYS2d 827 [1976]; see *American Ind. Paper Mills Supply Co., Inc. v County of Westchester*, 65 AD3d 1173, 1175, 886 NYS2d 178 [2009]; *Arrowsmith v City of Rochester*, 309 AD2d 1201, 765 NYS2d 130 [2003]), but that presumption is rebuttable. In *Sokolov v Village of Freeport* (52 NY2d 341, 420 NE2d 55, 438 NYS2d 257 [1981]), the Court of Appeals examined a local ordinance that required rental permits similar to those required by the Village here. That ordinance, like the one at bar, required site inspections and certifications before a permit or renewal could be issued. The Court declared that '[i]t is beyond the power of the State to condition an owner's ability to engage his property in the business of residential rental upon his forced consent to forego

---

[7]"The Superintendent of the Building Department or his or her delegate shall review each application for completeness and accuracy and shall make an on-site inspection of the proposed rental dwelling unit or units" (Village Code § 106-6). With respect to property other than a one-to-four-family home, the law also requires the owner to provide, before a permit or renewal may be issued, 'certification from a licensed architect or a licensed professional engineer that the property which is the subject of the application is in compliance with all of the provisions of the Code of the Village of Hempstead, the laws and sanitary and housing regulations of the County of Nassau and the laws of the State of New York" (Village Code § 106-10 [C]).

certain rights guaranteed to him under the Constitution" (id. at 346), and it held that the ordinance was unconstitutional 'insofar as it effectively authorizes and, indeed, requires a warrantless inspection of residential real property' (id.). By contrast, in *Pashcow v Town of Babylon* (53 NY2d 687, 421 NE2d 498, 439 NYS2d 103 [1981]), the Court held that the rental permit ordinance at issue there was not unconstitutional on its face. The ordinance in *Pashcow*, however, unlike the ordinance at issue here, did not expressly require such an inspection before the issuance or renewal of a permit. Chapter 106 suffers from the same defect as the law at issue in Sokolov and, therefore, is unconstitutional on its face (see *Sokolov v Village of Freeport*, 52 NY2d at 345-346; *Town of Brookhaven v Ronkoma Realty Corp.*, 154 AD2d 665, 666, 547 NYS2d 68 [1989]). Thus, the defendant's motion is denied, and we search the record and award the plaintiffs summary judgment declaring that chapter 106 is unconstitutional (see CPLR 3212 [b]; *Dunham v Hilco Constr. Co.*, 89 NY2d 425, 676 NE2d 1178, 654 NYS2d 335 [1996])."

Here, similarly, the Code leaves Plaintiffs with the choice of consenting to the warrantless inspection or facing criminal charges, an outcome expressly disfavored by the Supreme Court. Inasmuch as there is no recognized exception, the requirement that the Plaintiffs consent to a warrantless search violates the Fourth Amendment.

Moreover, once the rental properties are tenanted, the owner/manager is not at liberty to consent to a search of the rental property without the permission of the occupying tenant. In the event that the tenant refuses to give such consent, the owner/manager is placed in the position of being in violation of the Code, subject to its exorbitant penalties and potential civil damages, all while the tenant is excused from paying rent. The owner/manager then has no adequate remedy to insist that the tenant grant his/her consent short of evicting the tenant and incurring substantial cost and expenses.

Likewise, in the event that the tenant is engaging in illegal activity within the rental property without the knowledge of the owner/manager which is discovered during a warrantless search of the property by either the architect/engineer or the code enforcement officer, the Code

allows the Town to refuse to issue a rental permit to the owner because the property is not in compliance and/or does not meet the requirements of all applicable county, state and federal laws, codes, rules and regulations.

It is clear, that the Town burdens Plaintiffs' Fourth and Fourteenth Amendment rights by operation of law, through maintaining and enforcing the Code.

### III. PLAINTIFFS HAVE STATED A DUE PROCESS CLAIM

The Equal Protection Clause prohibits States from making distinctions that either (1) burden a fundamental right, (2) target a suspect classification, or (3) intentionally treat one differently from others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).

To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org. Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F. 3d 286, 299 (6th Cir. 2006).

The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. *McLaughlin v. State of Florida*, 379 U.S. 184, 189-190 (1964). It also imposes a requirement of some rationality in the nature of the class singled out as well as, in defining a class subject to legislation, the distinctions that are drawn having "some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383, U.S. 107, 111; *Carrington v. Rash*, 380 U.S. 89, 93; *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 37; *Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 415.

Governmental classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis," as "arbitrary selection can never be justified by calling it classification." *Atchison, T.& S.F.R. Co. v. Matthews*, 174 U.S. 96, 104-105; *American Sugar Ref. Co. v. Louisiana*, 179 U.S. 89. "Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St. 3d 272. The Court must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose.

In this case, the Town professes that the legislative purpose as set forth in Section 160-1(B) of the Code is to protect the public health, safety and welfare of occupants in <u>all</u> rental dwellings. Yet, despite its professed purpose, the Town has excluded property used "solely for nonresidential purposes, one-family homes which continue to be the primary and permanent residence of the owner but are leased or occupied by one other than the owner or owner's immediate family for six (6) months or less in any calendar year; two-family homes where the owner or a member of the owner's immediate family resides in one of the two dwelling units, legal habitable dwellings detached from the main residence of the owner or owner's immediate family on the lot; multiple dwellings where the owner or owner's immediate family reside on site; large multiple residence developments or communities having approved bylaws and a homeowner's association, board or similar management organization on site with jurisdiction over rental property; those having valid accessory apartment permits; any property owned and/or operated by the United States, the State of New York, the County of Suffolk, Town of Huntington and their respective agencies and political subdivisions, any property owned or

23

managed by the Huntington Housing Authority, the Huntington Housing Authority Mortgage Banking Corporation, and the Huntington Community Development Agency" (See Section 160-21). This leaves only one and two-family houses which are not owner occupied to be regulated.

There is no explanation provided by the Town as to why a home being rented by an individual, albeit for income, or other purposes should be different or less protected where the owner does not reside on the premises. There is no explanation as to why requiring inspections of only non-owner occupied one and two-family houses will "enhance the delivery of municipal services, such as sanitation and code enforcement services, and emergency services such as fire, water and police services...[8]" as opposed to owner-occupied housing or multi-family housing of any kind.

The Town has aggrandized itself with the power to search each and every one of Plaintiffs' properties, while exempting the vast majorities of rental properties of other similarly situated rental property owners. The Code inspection requirement is arbitrary and is not predicated on neutral principles because it arbitrarily discriminates against non-owner occupied single and two-family rental homes and tenants of single and two-family rental homes, while refusing to inspect either (1) all of multi-family rental properties; or (2) owner-occupied properties of any kind.

The singling out of Plaintiffs' properties, and other single and two-family rental dwellings, while ignoring the majority of apartment rental dwellings and owner-occupied homes which are partially tenanted, is neither necessary not rationally related to a legitimate government purpose. There is neither a necessary nor rational basis for classifying single and two-family

---

[8]See Section 160-1.

24

rental homes and their owners and tenants as subject to an intrusive and comprehensive government search, whether with or without a warrant, while entirely exempting multi-family rental properties and/or owner-occupied properties and their owners and occupants.

Moreover, the Code as applied is overreaching and unduly burdensome. In order to secure a rental permit the Plaintiff must first fill out an application and provide delineated documentation , including any additional documentation which the Director of Public Safety deems "necessary" with regard to each application. The delineated documentation required by the Town includes "a signed and notarized certification in a form acceptable to the Director of Public Safety by each property owner or managing agent attesting to the total number of persons occupying each rental property or rental unit owned or managed by the registrant as of the date of registration."

This requirement does not refer simply to the property at issue but to each and every property which may be owned and/or managed by the applicant wherever that property may be located and whether that number totals 1, 15 or 1,000 rental properties. Even more egregious, under the Code the owner and/or manager has a duty to amend the application, and presumably this signed, notarized certification, "if the status of the information changes during the course of any calendar year" which would require the owner/manager to amend the application every time the total occupants in one of their other rental properties changed. Not only is this requirement unduly burdensome, it is an invasion of the owner/manager's right to privacy as guaranteed under the Fourth, Ninth and Tenth Amendments.

The application further requires that the owner/manager comply with Code Section 160-13, if applicable, which requires the registration of vacant and abandoned buildings which may

be owned by an owner/manager and located in the Town of Huntington, carrying the burden of complying with the Huntington Town Code to other properties, not just the rental property at issue.

The Code, as written, also allows for arbitrary and capricious interpretations of same by varying officials within the Town. The application process requires "information set forth in §160-13(A) as is applicable in the discretion of the Director of Public Safety", provides that the applicant provide "such other information and/or documentation deemed necessary by the Director of Public Safety", and allows that the "Town Attorney is authorized to pursue...other remedies which in the opinion of the Town Attorney may seem necessary and proper." (See Sections 160-25(C)(1) and (9) and 160-49). This allows the Director of Public Safety to continually supplement the documentation required in each individual case in order for a rental permit to be issued as well as allows the Town Attorney unfettered authority to penalize someone found guilty of a violation, whether knowingly or not, in any manner he/she deems fit without the public at large being aware of the possible punishment for such violation.

Most egregious, the Code requires that the rental property be in compliance with the current Huntington Town Code, and meet the requirements of all current applicable county, state and federal laws, codes, rules and regulations. This fails to take into account that many of these rental properties were built prior to the enactment of the current Huntington Town Code and/or the current applicable county, state and federal laws, codes, rules and regulations. While each of these homes possesses a valid Certificate of Occupancy or Certificate of Compliance duly issued by the Town of Huntington, if required[9], many of them do not, and are not required to, meet

---

[9]Homes built prior to 1938 do not require a Certificate of Occupancy or Compliance.

current building codes. Yet by requiring a certification that the rental property comply with the current Huntington Town Code the Town is effectively revoking the Certificates of Occupancy and/or Certificates of Compliance issued for these properties without an administrative hearing, thereby preventing the leasing of these properties unless expensive, and unnecessary, renovations are made to bring the properties to current code, all in violation of the Plaintiffs procedural due process rights. (See *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 2003 U.S. Dist. LEXIS 3 (E.D.N.Y. 2003)

A municipality cannot constitutionally condition the receipt of a benefit, such as a rental permit, liquor license, or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697-98, 33 L.Ed. 2d 570(1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests"). (See also, *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983). See also, *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 59-60 (2006); *Rutan v. Republican Party of Ill*, 497 U.S. 62, 78, 110 S.Ct. 2729 (1990).

The Supreme Court has further explained that "[those] cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."

*Koontz v. St. Johns River Water Management Dist.*, 133 S. Ct. 2586 at 2594 (2013). The Supreme Court goes on to say in *Koontz* that land use applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take. The unconstitutional conditions doctrine forbids governments from "pressuring someone into forfeiting a constitutional right" by "coercively withholding benefits".

The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting. Explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take." (See, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 547, 125 S. Ct. 2074, 161 L.Ed. 2d 876 (2005); *Dolan v. City of Tigard*, 512 U.S. 687, 114 S.Ct. 2309 (1994) (invoking "the well-settled doctrine of "unconstitutional conditions").

"[R]egardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them. *(Koontz, supra*.) The warrantless inspection of rental homes located within the Town is not "necessary to further the regulatory scheme". See *McLaughlin v. Kings Island, Div. Of Taft Broadcasting Co.*, 849 F.2d 990 (6th Cir. 1988).

The right to rent property in New York, like the right to exclude others from private property, is not merely a "government benefit", but rather, is an extension of one's private property rights....rights recognized by the New York Constitution and New York Courts as

28

"fundamental." The Town imminently threatens to pressure Plaintiffs into forfeiting their Fourth Amendment rights by, in response to the exercise of those rights, (1) withholding newly-required rental permits needed to rent homes in Huntington and/or (2) prosecuting Plaintiffs or the engineers and architects for criminal violations, should they rent their homes without newly-required rental permits.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied. If, however, the Court is inclined to grant the motion in any respect, then Plaintiffs respectfully request leave to amend their complaint.

Dated: December 29, 2016
      Islip, New York

RICHARD I. SCHEYER, ESQ. and
FREDRICK P. STERN, PC
By: Fredrick P. Stern, Esq. *(FS0882)*
*Attorneys for Plaintiffs*
2163 Sunrise Highway
Islip, NY 11751
(631) 650-9260