UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JEAN MAMAKOS and CITIZENS FOR FAIR
HOUSING, INC.,

                        Plaintiffs,

        -against-

TOWN OF HUNTINGTON, HUNTINGTON TOWN
BOARD, comprised of FRANK P. PETRONE,
Supervisor, and MARK CUTHBERSON, SUSAN A.
BERLAND, EUGENE COOK, and TRACEY A.
EDWARDS, of the Town of Huntington, in their
capacity as Councilmen, JOSEPH ROSE, Interim
Director of the Department of Public Safety of the
Town of Huntington, DEPARTMENT OF PUBLIC
SAFETY OF THE TOWN OF HUNTINGTON, and
TERRANCE MCNALLY, Fire Marshal of the Town
of Huntington in his official capacity,

                        Defendants.
-------------------------------------------------------------------X

**FILED**
**CLERK**

7/5/2017 5:28 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

ORDER
16-CV-5775(SJF)(GRB)

FEUERSTEIN, District Judge:

I.      Introduction

        On October 17, 2016, plaintiffs Jean Mamakos ("Mamakos") and Citizens for Fair

Housing, Inc. ("CFH") (collectively, "plaintiffs") commenced this action against defendants

Town of Huntington ("the Town"); the Huntington Town Board, comprised of Frank P. Petrone ,

the Town Supervisor, and councilpersons Mark Cuthberson, Susan A. Berland, Eugene Cook and

Tracey A. Edwards; Joseph Rose ("Rose"), as the interim director of the Department of Public

Safety of the Town of Huntington; the Department of Public Safety of the Town of Huntington

("DPS"), and Terrance McNally ("McNally"), in his official capacity as the fire marshal of the

1

Town of Huntington (collectively, "defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging, *inter alia*, that certain provisions of the Town's Residential Rental Permits ordinance ("the RRP Law"), codified in Sections 160-21 through 160-30 of article III of chapter 160 of the Town Code of the Town of Huntington ("the Town Code") are facially unconstitutional. Defendants now move to dismiss plaintiffs' claims in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. For the reasons set forth below, defendants' motion is granted to the extent set forth herein.

II.     Background

     A.     Factual Allegations[1]

Mamakos owns rental homes at 39 East Carver Street, Huntington, New York, "which currently maintains [sic] valid rental permits," and property at 192 Nassau Road, Huntington, New York, "each one of which is subject to the [RRP Law]." (Complaint ["Compl."], ¶ 6).

CFH is a not-for profit corporation "formed pursuant to Section 402 of the Not-for-Profit Law of the State of New York[,]" for the purpose of "defend[ing] and preserv[ing] the legal rights of landlords in the Town . . . ." (Compl., ¶ 7). "[E]ach and every one of the 15 members of [CFH] are property owners who rent properties in the Town . . . subject to the [RRP Law] and represent at least 30 rental properties." (*Id.*) According to plaintiffs, "[a]ll of the majority of the members of . . . .[CFH] have paid rental inspection fees to the Town . . . ." (*Id.*)

_____

[1]  The factual allegations in the complaint are assumed to be true for purposes of this motion, "unless contradicted by more specific allegations or documentary evidence," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), and do not constitute findings of fact by the Court.

2

Plaintiffs allege that "[i]n fulfilling its duties [as a municipal corporation], the Town, its' Council Members, the [DPS], and the Office of the Fire Marshal ['OFM'], including without limitation any and all other Departments, are involved in the Permit Process[,]" (Compl., ¶ 8); and that the DPS and the OFM "implemented the [RRP Law] and/or enforced the unconstitutional restrictions accomplished through the Town's policies and practices described [t]herein." (*Id.*, ¶ 10).

The RRP Law challenged by plaintiffs was enacted on May 10, 2016 and amended an earlier version that was in effect until 2015. (Compl., ¶ 13). Section 160-1 of the RRP Law sets forth the legislative intent and provides, in pertinent part, as follows:

> (A)　The Town Board intends to preserve the health, safety and welfare of residents within the jurisdictional limits of the Town . . . exclusive of its Incorporated Villages by establishing a permitting system which will enhance the delivery of municipal services, such as sanitation and code enforcement services, and emergency services, such as fire, water and police services when such services are needed, and effectively aid in the maintenance of the peace and good order and a tool for the establishment of efficient planning.

> (B)　In addition, the welfare and safety of our residents is threatened by rental properties that are occupied while infested with rodents and other creatures, lack sufficient heat, ventilation, light or other necessities, and are otherwise uninhabitable or blighted or threaten the quality of life in the community by creating nuisances or disrupting the peace and good order.

Town Code, art. I, § 160-1.

Section 160-22(A) of the RRP Law provides:

> (1)　It shall be unlawful for the owner or managing agent to lease or rent, or offer to lease or rent, any rental property or dwelling unit for which a valid rental permit has not been issued pursuant to this article. It shall be immaterial whether or not rent or any other consideration is paid or tendered to the owner or managing agent by the occupant of such dwelling unit or rental property; and

(2)     It shall be unlawful for the owner or managing agent to submit for filing pursuant to this chapter false or misleading statements or information, or to submit for filing a certification or other document generated by one who did not inspect all portions of the rental property[.[2]]

Town Code, art. III, § 160-22(A).  "Rental Property" is defined in the RRP Law as follows:

"Dwelling unit(s) in one and two family homes, multiple residences, dormitories, and mixed-use occupancy buildings in any zoning district which are occupied for habitation as a residence by persons other than the owner or the owner's immediate family, and for which a fee or other compensation is received by the owner or managing agent, directly or indirectly, in exchange for such residential occupation.  The term 'rental property' shall exclude properties used solely for nonresidential purposes; one family homes which continue to be the primary and permanent residence of the owner but are leased or occupied by one other than the owner or owner's immediate family for six (6) months or less in any calendar year; two-family homes where the owner or a member of the owner's immediate family resides in one of the two dwelling units, legal habitable dwellings detached from the main residence of the owner or owner's immediate family on the lot; multiple dwellings where the owner or owner's immediate family reside on site; large multiple residence developments or communities having approved bylaws and a homeowner's association, board or similar management organization on-site with jurisdiction over rental property; those having valid accessory apartment permits; any property owned and/or operated by the United States, the State of New York, the County of Suffolk, Town of Huntington and their respective agencies and political subdivisions; any property owned or managed by the Huntington Housing Authority, the Huntington Housing Authority Mortgage Banking Corporation, and the Huntington Community Development Agency."

Town Code, art. III, § 160-21[3].

---

[2]  In addition, Section 160-22(B) of the RRP Law provides that "[a]ny engineer, architect or other consultant including an independent state certified code enforcement official who generates a certification or other document for filing pursuant to this chapter containing false or misleading statements or information; or generates a certification without entering into and/or inspecting all portions of the rental property, shall be deemed to be in violation of this article." Town Code, art. III, § 160-22(B).  "Independent state certified code enforcement official" is defined as "[a]n independent New York State trained and certified code enforcement inspector, who is not employed by the Town of Huntington or is an employee of the owner of the property being certified." *Id.*, § 160-21.

[3]  "Dwelling Unit" is defined as "[a]ny residential area, space, or housing unit in any zoning district which is occupied for habitation as a residence by persons other than the owner or

Section 160-23 of the RRP Law provides that the "presence or existence of any" of the

twelve (12) conditions set forth therein, *e.g.*, more than one (1) mailbox, gas meter or electric

meter at the premises, separate entrances, etc., "shall create a rebuttable presumption that rental

property or a dwelling unit is rented." Town Code, art. III, § 160-23.

Pursuant to the RRP Law, "[a] rental permit and renewal thereof shall be valid for a

period of two (2) years from the date of issuance unless sooner terminated." Town Code, art. III,

§ 160-24.

Section 160-25(A) of the RRP Law provides, in relevant part:

> "The owner or managing agent of rental property or a dwelling unit shall apply for
> a rental permit before the property or dwelling unit is advertised for rent or if the
> vacancy is not advertised then such permit shall be obtained before the premises
> are leased or occupied by one other than a member of the owner's immediate
> family. . . . Failure to file an application or to apply within the specified period
> shall be deemed a violation of this article."

Town Code, art. III, § 160-25(A).

Section 160-25(C) provides, in relevant part:

> "Applications for rental permits shall be on forms provided by the [DPS] and
> signed by each owner or managing agent of the property. A non-refundable
> application fee of seventy file ($75.00) dollars [sic] per property shall be payable
> upon application. . . . Each application shall include the following: (1) The
> information set forth in § 160-13(A) as is applicable in the discretion of the
> Director of Public Safety, and § 160-13(B); and . . . (6) A signed and notarized
> certification in a form acceptable to the Director of Public Safety by each property

the owner's immediate family[,]" Town Code, art. III, § 160-21; "multiple residence" is defined
as "[a] building or portion thereof designed for or occupied by three or more family units living
independently of each other," *id.*; "dormitory" is defined as "[a] building primarily providing
sleeping and/or residential quarters for large numbers of people including but not limited to
boarding schools, college or university students," *id.*; and "mixed-use occupancy" is defined as
"[a] building or portion thereof that is utilized or occupied for more than one use or purpose." *Id.*
Article III of the Town Code applies "only to the dwelling units contained within mixed-use
occupancy buildings." *Id.*

owner or managing agent attesting to the total number of persons occupying each rental property or rental unit owned or managed by the registrant as of the date of registration; and . . . (9) Such other information and/or documentation deemed necessary by the Director of Public Safety."

Town Code, art. III, § 160-25(C).

Section 160-25(D) of the RRP Law provides that "[i]f the status of the information changes during the course of any calendar year, it is the responsibility of the owner or managing agent to submit such changes to the [DPS] in writing within thirty (30) days of the occurrence of such change," Town Code, art. III, § 160-25(C); and Section 160-25(E) provides that the "[f]ailure of an owner or managing agent to secure a rental permit or to amend the information, or to do so within the period provided shall constitute a violation of [the RRP Law]." *Id.*, § 160-25(E).

Section 160-26(A) of the RRP Law provides that "[a] non-refundable permit fee of four hundred and seventy-five ($475) dollars [sic] per property shall be payable before a rental permit or renewal permit is issued[,]" Town Code, art. III, § 160-26(A); and Section 160-26(B) provides that "[a] late charge equal to two times the amount of the permit fee, prorated for the period of delay, shall be charged to owners and/or managing agents who fail to apply for a rental permit or renew their permits on a timely basis." *Id.*, § 160-26(B). In addition, Section 160-26(C) of the RRP Law provides that "[i]f the owner has requested that an inspection be performed by the Town instead of a licensed professional engineer or registered architect, a re-inspection fee of seventy-five ($75) dollars [sic] shall be charged if the property owner or his agent fails to appear for a scheduled inspection for a second time." *Id.*, § 160-26(C).

Section 160-26(D) of the RRP Law provides:

(1) No permit or renewal thereof shall be issued unless the property is in compliance with all the provisions of the Code of the Town of Huntington, and meets the requirements of all applicable county, state and federal laws, codes, rules and regulations.

(2) No permit or renewal thereof shall be issued unless the property owner provides a certification from a professional engineer or registered architect licensed in the State of New York and containing their seal, or the certification of a Town ordinance/code enforcement officer, or of an independent state certified code enforcement official, attesting that the property at issue is in compliance with the Huntington Town Code, and meets the requirements of all applicable county, state and federal laws, codes, rules and regulations. *Nothing in this article, except in the case of an emergency pursuant to § 160-48(C), shall be deemed to authorize the Town to conduct an inspection of any property without the consent of the owner or managing agent, if the dwelling unit or units are unoccupied, and if occupied, upon the consent of the occupant, owner or managing agent of the property in the absence of a warrant duly issued by a court of law*."

Town Code, art. III, § 160-26(D) (emphasis added). Plaintiffs challenge the italicized language in that provision of the RRP Law as "self-serving," and allege that notwithstanding that "disclaimer clause[,] . . . the property owners are coerced into complying without a warrant to protect their property and the income generated therefrom since the permits will either not be issued or will be revoked without said search." (Compl., ¶ 94).

Section 160-27 of the RRP Law provides:

"A rental permit may be renewed by application to the [DPS] as in the case of an original permit application, with payment of a non-refundable application fee of twenty-five ($25) dollars [sic] and the production of any documents deemed necessary by the Director. All applications for a renewal of a permit shall be filed before the expiration of the original permit, and are subject to the late charges set forth in § 160-26(B). A permit may only be renewed by the same owner for the same property upon the payment of the permit fee set forth in § 160-26(A)."

Town Code, art. III, § 160-27.

Pursuant to Section 160-28(A) of the RRP Law, *inter alia*, "[a]ny application for a rental

permit, including the renewal or transfer of a permit, can be denied for the reasons set forth in §
160-36[,]" Town Code, art. III, § 160-28(A), including (1) that the rental property, or parts
thereof, "is determined to be unfit for human habitation or occupancy or a hazard to the public
because of the failure of the owner or occupant to comply with notice(s) or order(s) by the town,
or due to a prolonged lack of maintenance or owner failure[,]" *id.*, art. IV, § 160-36(A), "contains
unsafe equipment, wiring, pipes or other conduit or installation, or lacks illumination, ventilation,
sanitation, heat or other facilities adequate to protect the health and safety of the occupants or the
public[,]" *id.*, § 160-36(B), or "is damaged, decayed, dilapidated, unsanitary, unsafe or infested in
such a manner as to create a hazard to the health and safety or the occupants or the public[,]" *id.*,
§ 160-36(C); (2) that "[t]he rental property, because of its location, general condition, state of the
premises, number of occupants or other reason, is unsanitary, unsafe, hazardous, overcrowded or
for other reasons is detrimental to the health and safety of the occupants or the general public in
whole or part[,]" *id.*, § 160-36(D); (3) that the "[o]ccupancy of the rental property by the persons
using the premises creates a hazard or public nuisance or other condition which negatively
impacts the use and/or enjoyment of surrounding properties, or threatens the peace and good
order or quality of life in the surrounding community[,]" *id.*, § 160-36(E); or (4) that "any other
condition or circumstance [exists] which, in the opinion of the Town is dangerous, unsafe or
jeopardizes the health, welfare and safety of the general public or occupants." *Id.*, § 160-36(F).

   Section 160-48 of the Town Code provides, in relevant part:

> (A) Application for a search warrant. . . . The Town ordinance/code
> enforcement officer is authorized to make application to any court of
> competent jurisdiction for the issuance of a search warrant in order to
> conduct an inspection of any premises covered by this chapter where the
> owner or managing agent or occupant fails or refuses to allow an

> inspection of the rental property, and where there is reasonable cause to believe that a violation of this chapter has occurred. The application for a search warrant shall in all respects comply with the applicable laws of the State of New York.
>
> (B) Search without warrant restricted. Nothing in this chapter, except for the provisions concerning emergency inspections, shall be deemed to authorize the Town ordinance/code enforcement officer to conduct an inspection of any premises subject to this chapter without the consent of the owner, managing agent, or occupant of the premises, or without a warrant duly issued by a court of competent jurisdiction."
>
> (C) Emergencies. If, in the judgment of the Director of Public Safety, an emergency exists as when a condition or hazard is an immediate peril to the public health and safety, or a serious and immediate danger to person or property, he or she may enter any building or structure to inspect and investigate.

Town Code, art. V, § 160-48.

Violations of the RRP Law are punishable by a fine or criminal penalty as set forth in Section 160-49(A) of Article V of the Town Code. In addition, *inter alia*, the Town Attorney is authorized to pursue civil and equitable relief. Town Code, art. V, § 160-49(B).

Plaintiffs allege that the OFM and DPS are "charged with implementing the [RRP Law] and/or enforcing the unconstitutional restrictions accomplished through the Town's policies and practices described [in the complaint]," (Compl., ¶ 26); and that Rose and McNally "have undertaken specific actions to process the [RRP Law] so as to deprive and/or violate the constitutional rights of the [p]laintiffs . . . [and] to implement the policies, practices and customs of the [Town]." (*Id.*, ¶ 27).

Plaintiffs allege that "[i]n most cases, [their] use of their properties as rental properties pre-existed the implementation of the [RRP Law]," (Compl., ¶ 44); that Mamakos "has paid rental inspection fees to the Town . . . pursuant to the requirements of the [RRP Law][,]" (*id.*, ¶

9

38), and "has been inspected pursuant to the [RRP Law] at least once by the Town . . . in 2015-2016[,]" (id., ¶ 39); that "[t]he majority of the members of . . . [CFH] have also paid rental inspection fees to the Town . . . pursuant to the [RRP Law]," (*id.*, ¶ 38); that "none of the [p]laintiffs have voluntarily and knowingly consented to the inspections required pursuant to the [RRP Law]," (*id.*, ¶ 40); and that "[d]ue to the revisions to the [RRP Law] in May, 2016, some or all of the [plaintiffs] will be required to either have the [Town] or [third party inspectors] to [sic] conduct warrantless searches within all of their rental properties." (*Id.*, ¶ 59). According to plaintiffs, "[e]ach inspection of . . . [their] rental property by the Town or [third-party inspectors] under the [RRP Law] were [sic] coerced through the implied threat of loss of property or liberty; and plaintiffs continue to be coerced into providing involuntary consent to such inspections[,]" (*id.*, ¶ 41), insofar as "if they do not consent to a warrantless search of their property by the [Town] or the [third-party inspectors] they are faced with criminal charges and fines; and/or loss of all rental income related to their Huntington rental properties which had been inspected by the [Town] . . . prior to the implementation of the [RRP Law]."[4] (*Id.*, ¶ 45; *see also Id.*, ¶¶ 50, 61).

---

[4] According to plaintiffs, after the initial inspections of their rental properties prior to the enactment of the RRP Law, "the Town had no knowledge of any risk of public or private harm which may have existed on any of . . . [their] rental properties." (Compl., ¶ 46). Plaintiffs also allege: (1) upon information and belief, that none of their tenants or neighbors have "ever complained to the [Town] regarding code violations or other nuisances at any of [their] properties, or by any of the [p]laintiffs at other properties[,]" (*id.*, ¶ 53); (2) that "there are no conditions at any of the[] rental properties that would give rise to the need for an emergency entry into those properties, or vest the [Town] with probable cause to believe that any [p]laintiffs' [sic] rental properties maintain an interior code violation or other nuisances at this time[,]" (*id.*, ¶ 54); (3) that none of them "have ever been prosecuted or fined by the [Town] for any alleged interior code violations or other nuisances[,]" (*id.*, ¶ 55); (4) that each of them "is contractually and statutorily obligated to provide their tenants with a fit and habitable property, free from any nuisances and/or other dangerous conditions, and understands and abides by th[o]se terms[,]" (*id.*, ¶ 56); (5) that none of them "is currently in violation or has ever been found to be in violation of their contractual or statutory obligations[,]" (*id.*, ¶ 57); and (6) that

Thus, plaintiffs claim that they "are threatened with loss of property and criminal charges as a consequence of any attempt to assert a constitutional right to be free from unreasonable searches of their real property[,]" (*id.*, ¶ 42); that they "now intend to refuse all further efforts by the Town to inspect their rental properties or to collect fees from them to fund the inspections of their properties and others under the [RRP Law]," (*id.*, ¶ 51); and that, consequently, they are "in imminent risk of facing criminal charges and/or loss of their property rights in response to this assertion of their Fourth Amendment rights." (*Id.*, ¶ 52).

### B.    Procedural History

On October 17, 2016, plaintiffs commenced this action against defendants pursuant to Section 1983, alleging, *inter alia*, that certain provisions of the Town's RRP Law, codified in Sections 160-21 through 160-30 of Article III of Chapter 160 of the Town Code, are unconstitutional, both facially and as-applied. Specifically, plaintiffs claim that the RRP Law violates: (1) the "unconstitutional conditions" doctrine arising under the Due Process Clauses of the Fifth and Fourteenth Amendments (second cause of action) by, *inter alia*, "imminently threaten[ing] to pressure [p]laintiffs into forfeiting their Fourth Amendment rights by, in response to the exercise of those rights, [a] withholding newly-required rental permits needed to rent homes in Huntington and/or [b] prosecuting [p]laintiffs or the engineers and architects for criminal violations, should they rent their homes without newly-required rental permits[,]" (Compl., ¶ 77); (2) the Search and Seizure Clause of the Fourth Amendment (second cause of action) by "[a] coercing property owners' consent to" inspections of rental properties located

_____

they "are, by all accounts, model property owners and landlords." (*Id.*, ¶ 58; *see also Id.*, ¶ 129).

within the Town, "and [b] violating tenants' reasonable expectation of privacy, while [c] maintaining no warrant requirement[,]" (*id.*, ¶ 93); (3) the Warrants Clause of the Fourth Amendment (second cause of action) because "the regulatory scheme [a] does not make provision for a warrant to be obtained[,] [b] is not predicated on neutral principles[,]" (*id.*, ¶ 97), insofar as "it arbitrarily discriminates against rental homes, while refraining from inspecting owner-occupied properties of any kind, irrespective of the properties' condition[,]" (*id.*, ¶ 98), "[c] is tantamount to a general warrant inviting an open search[,] and [d] does not require probable cause[,]" (*id.*, ¶ 97); and (4) the Equal Protection Clause of the Fourteenth Amendment (third cause of action) because by excluding numerous properties from its provisions, *see* Town Code, art. III, § 160-21, and regulating "only houses which are not owner occupied," (*id.*, ¶ 108), it "arbitrarily discriminates against single-family rental homes and tenants of single-family rental homes, while refusing to inspect either [a] all of multi-family rental properties[,] or [b] owner-occupied properties of any kind[,]" without a necessary or rational basis. (*Id.*, ¶¶ 112-14). Plaintiffs also assert a state law claim for unjust enrichment (fourth cause of action), alleging that the Town "has acquired funds rightfully belonging to [p]laintiffs and others" through its unconstitutional "inspection and permitting fee assessments," which it "would be unconscionable for the Town to retain and/or abstain from returning . . . ." (*Id.*, ¶¶ 122-124).

Specifically, plaintiffs allege, *inter alia*, (1) that under the RRP Law, "a rental permit may only be issued to property owners after the home at issue has undergone an inspection[,]" (Compl., ¶ 16); (2) that the RRP Law "authorizes Town Officials or third party Engineer or Architect [sic] . . . to conduct a full inspection of a rental home when a tenant leaves, the permit expires, renewal of an existing permit, or the [Town] has reason to believe that a violation of the

Code may exist pursuant to Section 160-23 which contains a list of 12 presumptive theories that the property is being rented[,]" (*id.*, ¶ 17); (3) that during the inspections, the Town or third-party inspectors "may search for evidence that can result in criminal charges[,]" (*id.*, ¶ 18), or "suspension of the permit to rent the property[,]" (*id.*, ¶ 19); and (4) that the RRP Law "does not specify the scope of the inspection other than to state that the party conducting the inspection must certify that the rental property at issue must generally comply with all Town, County, State and Federal Regulations of any kind whatsoever." (*Id.*, ¶ 20). Moreover, according to plaintiffs, the RRP Law "alludes to an Inspection Report which contains 60 questions that the [inspectors] must fully certify to the satisfaction of the [Town]," (*id.*, ¶ 21), including "items such as: roof, drains, walls, fences, plumbing fixtures, entrances, rails, alternate decks, swimming pools, doors, room sizes, floor plans, photographs (interior and exterior) in addition to numerous other requirements of the Director of Public Safety as he may require pursuant to Section 160-25 of the Code[,]" (*id.*, ¶ 22), thus making it clear "that a thorough search is to be made of the interior and exterior of the premises including 'Common Egress Corridor, Interior, Kitchen, Hallways, Laundry, Basement, Bedrooms, Bathrooms' as well as other items." (*Id.*, ¶ 24).

Plaintiffs further allege that "[t]he Town, in an attempt to prevent mistakes made by other municipalities who have had similar codes declared unconstitutional, has inserted the provision allowing [p]laintiffs, and other homeowners in the Town . . . to elect to have the[] unlawful searches performed by the Third Party [inspectors] rather than a representative of the Town[,]" (Compl., ¶ 28; *see also id.*, ¶¶ 47-48), but that provision "is nothing more than an attempt to do an end run around the Fourth Amendment to the United States Constitution . . ." (*id.*, ¶ 29), insofar as "when performing such inspections, the Third Party [inspectors] are required to sign

and seal said certifications which must contain an attestation that the rental property inspected was in compliance with the entire Code and all applicable County, State and Federal law, codes, rules and regulations," (*id.*, ¶ 30), and subjects them "to criminal penalties if their authorization or certifications are incorrect." (*Id.*, ¶ 31). According to plaintiffs, the provision of the RRP Law that subjects the third-party inspectors "to criminal responsibility if they do not certify that all codes of the Town, County, State and Federal Government have been complied with on each site they inspect, has made it exceedingly difficult to obtain such searches and is designed to compel the property owners to have the [Town] inspectors perform the warrantless searches." (*Id.*, ¶ 60).

In addition, plaintiffs challenge the RRP Law on the basis that "[t]here is no reduction in fees or costs payable by homeowners" if they have a third-party perform the inspection in lieu of the Town. (Compl., ¶ 32).

Plaintiffs seek, *inter alia*, (1) judgment declaring that "all relevant portions" of the Town's RRP Law, *i.e.*, "the inspection search provision" and the provisions "wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the permit requirement," (Compl. at 33-34), and "[d]efendants' enforcement policies, practices, and actions related to the [RRP Law]," are unconstitutional, both facially and as-applied, and injunctive relief prohibiting defendants "from enforcing the provisions of the [RRP Law] and all policies, practices, and conduct reliant on and related to the [RRP Law's] search policies, including but not limited to the [RRP Law's] search fees and permitting process" (first cause of action), (*id.*, ¶¶ 68-69; *see also id.*, ¶¶ 135-136); (2) judgment declaring (a) that the RRP Law "is insufficient, without more, to serve as a basis for the [Town] to obtain an administrative warrant[,]" (*id.* at 34, ¶ 3), and (b) "that through the imposition of monetary assessments on

[p]laintiffs and others, precipitated by the [RRP Law], [d]efendant [sic] has been and continues to be unjustly enriched[,]" (*id.* at 34, ¶ 4); (3) injunctive relief (a) enjoining defendants "from attempting to seek and obtain a warrant, predicated on the [RRP Law] to search [p]laintiffs' properties[,]" (*id.* at 34, ¶ 7), and (b) "[m]andat[ing] the return of [RRP Law] funds paid by [p]laintiffs and others to . . . [the Town], to the extent that the [Town] has been unjustly enriched[,]" (*id.* at 34, ¶ 8); (4) nominal damages to compensate plaintiff for the violations of their constitutional rights; (5) reimbursement of the amounts paid by plaintiffs to the Town for inspection fees; and (6) costs and attorney's fees pursuant to 42 U.S.C. § 1988.

Defendants now move to dismiss plaintiff's claims in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

III.   Discussion

A.     Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-1 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are

well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) or 12(c) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). Since, *inter alia*, the complaint relies heavily upon the Town's RRP Law, (*see* Compl., ¶¶ 14-17, 19-20, 22, 24, 33, 60, 94, 108), and the Court may take judicial notice of the Town Code, *see, e.g. Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 337, n. 4 (E.D.N.Y. 2010); *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 451 n. 11 (W.D.N.Y. 2009), *aff'd*, 392 F. App'x 887 (2d Cir. Sept. 7, 2010), the specific provisions of the RRP Law are properly considered on defendants' motion to dismiss.

### B.     Fourth Amendment

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[,]'" *City of Los Angeles, Cal. v. Patel*, — U.S. —, 135 S. Ct. 2443, 2451-52, 192 L. Ed. 2d 435 (2015), and "further provides that 'no Warrants shall issue, but upon probable cause.'" *Id.* at 2452. "Based on this constitutional text, the [Supreme] Court has repeatedly held that searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable

[] subject only to a few specifically established and well-delineated exceptions." *Id.* (quotations, alterations and citations omitted). As relevant here, the administrative search exception to the warrant requirement provides that "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.*

1. Facial Challenge

"A facial challenge is an attack on a statute itself as opposed to a particular application[,]" and is "the most difficult [] to mount successfully[,]" *Patel*, — U.S. —, 135 S. Ct. at 2449, since, with the exception of First Amendment challenges, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987); *accord New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015), *cert. denied sub nom Shew v. Malloy*, 136 S. Ct. 2486, 195 L. Ed. 2d 822 (2016). "The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *Salerno*, 481 U.S. at 745, 107 S. Ct. 2095. Thus, plaintiffs have a "heavy burden" of demonstrating that the RRP Law is "'facially' unconstitutional" under the Fourth Amendment. *Id.*

In *Sokolov v. Village of Freeport*, 52 N.Y.2d 341, 438 N.Y.S.2d 257, 420 N.E.2d 55 (N.Y. 1981), the owners of rental property within the Village of Freeport challenged the constitutionality of a rental ordinance that

"provide[d], in effect, that no one [could] let or relet a residence rental property

within the Village of Freeport without first obtaining a permit from the village. No permit [could] issue without an inspection of the premises to determine that the property [was] 'safe, clean, sanitary, in good repair, and free from rodents and vermin'. Permits [were required to] be renewed every two years or each time a vacancy occur[ed], and an owner [could not] rerent [sic] his property without submitting to an inspection and obtaining certification that the premises [were] free from all violations. Furthermore, the owners [were required to] immediately notify the department of buildings of the village of any vacancies, and the department [was required to] thereafter inspect the property within two business days. In the event that the inspection reveal[ed] any violations, the department [was authorized to] issue a notice of violations or a notice to vacate the premises. The village [was also authorized to] impose a penalty of $250 per day for each day in which a building is occupied without a rental permit. Thus, in substance, a landlord [was] subject[ed] to a fine of $250 per day for failure to consent to a warrantless administrative inspection."

*Id.* at 343-44, 438 N.Y.S.2d 257. The Court of Appeals of the State of New York held that the rental permit ordinance was unconstitutional because although it did not directly authorize a warrantless search, it "effectively authorize[d] and, indeed, require[d] a warrantless inspection of residential rental property," insofar as it provided that an individual would be subjected to criminal penalty if he rented or re-rented his premises without first obtaining a permit, which could only be obtained if the property owner consented to an inspection. *Id.* at 345-46, 438 N.Y.S.2d 257.

The New York Court of Appeals further held that "[a] property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property[,]" *Sokolov*, 52 N.Y.2d at 346, 438 N.Y.S.2d 257, and that "[i]t is beyond the power of the State to condition an owner's ability to engage his property in the business of residential rental upon his forced consent to forego certain rights guaranteed to him under the Constitution." *Id.*; *see also Pashcow v. Town of Babylon*, 53 N.Y.2d 687, 688, 439 N.Y.S.2d 103, 421 N.E.2d

498 (N.Y. 1981) ("[A]n owner's ability to rent his premises may not be conditioned upon his consent to a warrantless inspection[.]")  In sum, "[a]n ordinance which compels consent to a warrantless search may not be upheld except in certain carefully limited circumstances." *Sokolov*, 52 N.Y.2d at 347, 438 N.Y.S.2d 257.

However, a municipal ordinance, like the RRP Law, that requires either "consent or a warrant for an administrative search except in emergency situations," is not unconstitutional on its face.  *Pashcow*, 53 N.Y.2d at 688, 439 N.Y.S.2d 103.  Since, by its plain terms, the RRP Law authorizes the Town ordinance/code enforcement officer to search or inspect rental property only with either consent or a valid search warrant, except in emergency situations, it does not authorize a warrantless inspection without consent and is facially constitutional under the Fourth Amendment.  *See, e.g. Wisoff v. City of Schenectady, N.Y.*, No. 1:07-cv-34, 2015 WL 6509759, at * 4 (N.D.N.Y. Oct. 28, 2015), *aff'd*, 670 F. App'x 724 (2d Cir. No. 21, 2016) (finding that since the ordinance at issue, by its plain terms, "authorize[d] the building inspector to enter [property] only with either consent or a search warrant[,] it [did] not authorize a warrantless inspection without consent[,]" and, on its face, satisfied the Fourth Amendment.[5]); *MacPherson*

---

[5]  The ordinance at issue in *Wisoff* provided, in relevant part, that "[i]t shall be unlawful for any owner to permit the occupancy of any rental unit subject [thereto], unless such unit has a current and valid rental certificate or temporary rental certificate[;]" that "[w]ithin five working days of receipt of an application [for a rental certificate], the Building Inspector *shall* inspect the rental unit to determine if the rental unit is in compliance with the . . . standards [set forth therein;]" and that "[d]uring regular business hours or in an emergency, the Building Inspector or his representative or any duly authorized City representative, upon the showing of proper credentials and the discharge of his duties, may enter any building or rental unit within a building.  If access to such property is refused, the Building Inspector shall apply for a search warrant or court order in an appropriate court and upon showing that there is reasonable grounds to believe that a building or rental unit within a building is rented and occupied in violation of this article."  *Wisoff*, 2015 WL 6509759, at * 1-2 (emphasis added).

*v. Town of Southampton*, No. 07-cv-3497, 2013 WL 6058202, at * 10 (E.D.N.Y. Nov. 14, 2013)

(holding that since "[t]he Old Seasonal Law expressly required consent of the property owner,

tenant or lessee or, in the alternative, a valid search warrant, before" a town enforcement officer

could inspect or search the premises, the law was not "unconstitutional on its face."); *McLean v.*

*City of Kingston*, 57 A.D.3d 1269, 1271, 869 N.Y.S.2d 685 (N.Y. App. Div. 2008), *appeal*

*dismissed*, 12 N.Y.3d 848, 881 N.Y.S.2d 392, 909 N.E.2d 85 (N.Y. 2009) (finding that the

municipal ordinance at issue was facially constitutional inasmuch as its plain language

"require[d] either the consent of the owner or a valid search warrant in order for the Building

Safety Division to inspect property[.]")

In *Palmieri v. Town of Babylon*, No. 01-cv-1399, 2006 WL 1155162 (E.D.N.Y. Jan. 6,

2006), *aff'd*, 277 F. App'x 72 (May 7, 2008), the plaintiff challenged the constitutionality of a

similar rental permit ordinance of the Town of Babylon that requires property owners "to obtain a

rental permit for any non-owner occupied rental unit regardless of whether or not rent is paid[,]"

*id.* at * 1, and to obtain a rental permit by applying "in writing to the Town's Building Inspector

and provid[ing] certification [from a licensed professional engineer or a Town building

inspector] that the subject Property complies 'with all the provisions of the Code of the Town of

Babylon, the laws and sanitary and housing regulations of the County of Suffolk and the Laws of

the State of New York.'" *Id.* (quoting Town Code of the Town of Babylon, § 153-6(B)).

Section 153-8 of the rental permit ordinance provides, in pertinent part:

> "The Building Inspector of the Town of Babylon is authorized to make or cause to
> be made inspections to determine the condition of dwellings and to safeguard the
> health, safety, morals, and welfare of the public. The Building Inspector . . . is
> authorized to enter, upon the consent of the owner, any dwelling . . . at any
> reasonable time during daylight hours or . . . in an emergency, without the consent

of the owner.”

*Id.* at *10, n. 8. Section 153-9 provides, in relevant part:

> “The Building Inspector of the Town of Babylon . . . is authorized to make application to the District Court for the issuance of a search warrant in order to conduct an inspection of any premises . . . where the owner refuses or fails to allow an inspection of its rental premises and where there is reasonable cause to believe that a violation of this article has occurred.”

*Id.* Thus, contrary to plaintiffs’ contention, the Town of Babylon ordinance does not “mandate[]

that . . . a warrant be applied for” when an owner fails to consent to an inspection. (Plaintiffs’

Memorandum in Opposition to Defendants’ Motion to Dismiss [“Plf. Opp.”] at 15). Rather, the

Town of Babylon’s ordinance, like the RRP Law, merely authorizes the building inspector to

apply for a search warrant where the property owner refuses or fails to allow an inspection.[6]

---

[6] Even assuming that plaintiffs’ reference to “the Town of Babylon rental law” on page fifteen (15) of their memorandum in opposition to defendants’ motion to dismiss is a typographical error, and that plaintiffs’ argument therein refers to the City of Schenectady’s ordinance challenged in *Wisoff*, plaintiffs’ contentions are without merit. Plaintiffs’ first contention, *i.e.*, that since the RRP Law leaves the decision whether or not to seek a search warrant “to the discretion of the Town ordinance/code enforcement officer which would allow the rental permit application to remain in limbo if the property owner refuses to consent and the code enforcement officer elects not to seek a warrant,” (Plf. Opp. at 15), ignores that fact that there are other options available to a property owner or managing agent, *e.g.*, a property owner or managing agent can provide a certification from a licensed professional engineer or registered architect, or of an independent state certified code enforcement official, in lieu of a certification of the Town ordinance/code enforcement officer. *See* Town Code, art. III, § 160-26(D). Thus, a property owner or managing agent need not consent to an inspection by a Town ordinance/code enforcement officer, or have his rental permit application held “in limbo” if a Town ordinance/code enforcement officer elects not to seek a warrant; he can proceed to have his rental property inspected by a licensed professional engineer or registered architect, or an independent state certified code enforcement official, of his choosing upon his own terms. Moreover, a property owner or managing agent can commence a proceeding under Article 78 of the New York Civil Practice Law and Rules if the DPS does not grant or deny his rental permit application within a reasonable time.

Plaintiffs’ second contention, *i.e.*, that “there is no ‘reasonable cause to believe that a violation of [the RRP Law] has occurred,’” (Plf. Opp. at 15 (quoting Town Code, art. III, § 160-

Moreover, Section 153-10 of the Town Code of the Town of Babylon provides:

> "Nothing in this article, except for provisions concerning emergency inspections, shall be deemed to authorize the Building Inspector of the Town of Babylon or his authorized representative to conduct an inspection of any premises subject to this article without the consent of the owner of the premises and without a warrant duly authorized by an appropriate court."

*Palmieri*, 2006 WL 1155162 at * 10.

The district court in *Palmieri* held that since "'reasonable cause' under New York State law is considered to be the equivalent of 'probable cause' under the Fourth Amendment[,] . . . it [was] difficult, to say the least, to see how the Rental Permit Law [was] unconstitutional on its face." *Palmieri*, 2006 WL 1155162, at * 10. Moreover, in affirming the district court's

---

48(A)), when there is "an initial inspection prior to the leasing of a rental property or a renewal application where the previous tenant has already vacated the rental property, . . . thereby preventing the Town ordinance/code enforcement officer from making application to any court for a warrant to inspect," (*id.*), is disingenuous. Under the plain terms of the RRP Law, an owner or managing agent of rental property must apply for a rental permit "before the property . . . is advertised for rent or if the vacancy is not advertised . . . before the premises are leased or occupied by one other than a member of the owner's immediate family." Town Code, art. III, § 160-25(A). Moreover, the RRP Law specifically delineates twelve (12) conditions or occurrences, many of which are readily observable or ascertainable without entering the property, that constitute presumptive evidence, or create a rebuttable presumption, that property is rented, *e.g.*, more than one (1) mailbox, gas meter or electric meter at the premises; separate entrances; testimony by witnesses; etc. *See Id.*, § 160-23. Thus, evidence, *inter alia*, that any of those twelve (12) conditions or occurrences exist, or that the owner or managing agent has advertised rental property in the Town without having obtained a rental permit, which may exist or occur even prior to the leasing of the rental property or when the previous tenant has vacated the premises, would arguably provide the Town ordinance/code enforcement officer with reasonable cause to seek a search warrant under the RRP Law. Furthermore, as set forth above, a property owner or managing agent can also have his rental property inspected by a licensed professional engineer or registered architect, or an independent state certified code enforcement official, in order to obtain a rental permit where the Town ordinance/code enforcement officer does not seek a search warrant; the rental property is not advertised; the owner or managing agent does not consent to an inspection; or any other reason. Thus, contrary to plaintiffs' contention, there are no instances when "only an involuntary search of the rental property can be conducted. . . ." (Plf. Opp. at 15).

dismissal of the plaintiff's Fourth Amendment facial challenge, the Second Circuit found that the Town of Babylon's rental permit ordinance had "already been challenged as violating the constitutional prohibition against warrantless searches and ha[d] been declared constitutional on its face by the New York State Court of Appeals[,]" *Palmieri*, 277 F. App'x at 75 (citing *Pashcow*, 53 N.Y.2d 687, 688, 439 N.Y.S.2d 103), and that there was "no reason to disagree with the Court of Appeals' analysis on th[at] issue." *Id.*

Similarly, in *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207 (N.D.N.Y. 2012), *aff'd*, 524 F. App'x 742 (2d Cir. May 7, 2013), the plaintiff challenged a rental certificate ordinance requiring that "each owner obtain a valid rental certificate or temporary rental certificate prior to permitting an apartment to be occupied" and providing that "within five (5) days of receipt of [a] rental certificate application, [the municipality's] building inspector shall inspect the rental unit to determine if it is in compliance with specified portions of the [Municipal] Code that relate to safety and health concerns for the tenants." *Id.* at 210 (quotations and citations omitted). To enforce those sections, the ordinance provided, in relevant part:

> "[d]uring regular business hours or in an emergency, the Building Inspector or his representative or any duly authorized City representative, upon the showing of proper credentials and in the discharge of his duties, may enter any building or rental unit within a building. . . . Moreover, at the request of the Building Inspector, the Corporation Counsel is authorized to make application to the City Court of the City of Schenectady or any other court of competent jurisdiction for the issuance of a search warrant to be executed by a police officer in order to conduct an inspection of any premises believed to be subject to this chapter. . . . Further, the Building Inspector *may* seek a search warrant whenever the owner, managing agent or occupant fails to allow inspections of any dwelling unit contained in the rental property where there is a reasonable cause to believe that there is a violation of this chapter, or a violation of the New York Uniformed Building Code Act or of any code of the City of Schenectady or any applicable fire code."

*Id.* at 210-11 (emphasis added)[7] (quotations, alterations and citations omitted). In rejecting the plaintiff's Fourth Amendment facial challenge to the rental certificate ordinance, the district court held, *inter alia*, that the rental certificate ordinance did "not make it unlawful to refuse consent for a search of a rental unit; it simply ma[de] it unlawful to rent an apartment without first obtaining a rental certificate[;]" and that "[r]efusing consent for a warrantless inspection of the rental unit simply require[d] the code enforcement officer to obtain a search warrant, which [might] cause additional delay in the process of obtaining a rental certificate." *Id.* at 220.

The cases cited by plaintiffs are distinguishable. In the unreported case from the Southern District of Ohio, *Baker v. City of Portsmouth*, No. 1:14-cv-512, 2015 WL 5822659 (S.D. Ohio Oct. 1, 2015), the municipal ordinance at issue "afford[ed] no warrant procedure or other mechanism for precompliance review[,]" and, thus, left the owners and/or tenants of rental properties in the City of Portsmouth "with the choice of consenting to the warrantless inspection or facing criminal charges[.]"[8] *Id.* at *5. The district court held that the failure of the ordinance to include a warrant provision violated the Fourth Amendment. *Id.* at * 7.

---

[7] Contrary to plaintiffs' contention, (*see* Plf. Opp. at 16), many of the cases upon which defendants rely challenged a municipal ordinance that, like the RRP Law, merely authorizes, but does not require, the personnel charged with enforcing it to apply for a search warrant to inspect rental property where the owner refuses or fails to consent to an inspection and there is reasonable cause to believe that a violation of that ordinance has occurred. *See* Town Code of the Town of Babylon, § 153-9 (challenged in *Pashcow*, 53 N.Y.2d at 688, 439 N.Y.S.2d 103, and *Palmieri*, 2006 WL 1155162, at * 10, n. 8); City Code of the City of Schenectady, § 210-9(B) (challenged in *Hafez*, 894 F. Supp. 2d at 210-11); Town Code of the Town of Southampton, § 270-11 (challenged in *MacPherson*, 2013 WL 6058202, at * 11).

[8] The City of Portsmouth's ordinance provided that a rental dwelling permit "shall be issued [] if upon inspection of the rental dwelling it is determined that the rental dwelling meets the requirements of this code[,]" *Baker*, 2015 WL 5822659, at * 1; and also authorized inspections "in response to a complaint or if the [Code Enforcement] Official ha[d] a valid reason to believe that a violation of the provisions of the Code exist[ed]." *Id.* at * 2.

In the case *ATM One, LLC v. Incorporated Village of Hempstead*, 91 A.D.3d 585, 936 N.Y.S.2d 263 (N.Y. App. Div. 2012), the Village Code of the Village of Hempstead provided, in relevant part, that "[t]he Superintendent of the Building Department or his or her delegate shall review each application [for a rental occupancy permit] for completeness and accuracy and shall make an on-site inspection of the proposed rental dwelling unit or units." *Id.* at 586 (quoting the Village Code of the Village of Hempstead, § 106-6). The New York State Supreme Court, Appellate Division, Second Judicial Department, held that the Village's rental permit law "suffer[ed] from the same defect as the law at issue in *Sokolov*," *i.e.*, it conditioned the ability of the property owners and landlords in the Village to rent their dwelling units upon their consent to a warrantless inspection, and, therefore, was "unconstitutional on its face." *Id.* at 587.

Unlike the municipal ordinances challenged in *Baker* and *ATM One*, the RRP Law includes a warrant provision; does not condition to ability of the rental property owners and managing agents to rent their property upon their consent to a warrantless inspection; and, on its face, "does not unconstitutionally penalize a property owner for refusing to consent to a search." *MacPherson*, 2013 WL 6058202, at * 11 (quotations, alterations and citation omitted); *see also McLean*, 57 A.D.3d at 1271, 869 N.Y.S.2d 685 ("Nor is there any evidence that an owner's refusal to consent to an inspection is considered a violation of the ordinance, as the reinspection fee is imposed only when a property owner fails to notify the Building Safety Division of his or her unavailability on the date scheduled . . . (or if further inspections are required to determine if a violation has been remedied).") Indeed, as relevant here, penalties are only imposed under the RRP Law if "the owner or managing agent leases or rents, or offers to lease or rent, any rental property or dwelling unit for which a valid rental permit has not be issued." Town Code, art. III,

26

§ 160-22(A)(1).  Under the RRP Law, if a property owner or managing agent of rental property in the Town does not consent to an inspection by a Town ordinance/code enforcement official, he or she may still obtain a valid rental permit, and thereby retain the economic value of his or her property and avoid criminal penalties, if (i) he or she provides a certification from a licensed professional engineer or registered architect, or an independent state certified code enforcement official; or (ii) the Town ordinance/code enforcement officer seeks and obtains a search warrant to inspect the premises from a court of competent jurisdiction.  Therefore, the RRP Law affords rental property owners and managing agents in the Town "an opportunity to have a neutral decisionmaker review" a Town ordinance/code enforcement officer's demand to search the rental property "before he or she faces penalties for failing to comply[,]" which is all the Fourth Amendment requires for an administrative search.  *Patel*, — U.S. —, 135 S. Ct. at 2453.  "Actual review" by a neutral decisionmaker "need only occur in those rare instances where" a property owner or managing agent fails either to consent to an inspection by the Town ordinance/code enforcement officer or to provide a certification from a licensed professional engineer or registered architect, or an independent state certified code enforcement official, of his choice.  *Id.*  Accordingly, the RRP Law is not facially unconstitutional under the Fourth Amendment.  Thus, the branch of defendants' motion seeking dismissal of plaintiffs' Fourth Amendment facial challenges to the RRP Law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiffs' Fourth Amendment facial challenges to the RRP Law are dismissed in their entirety with prejudice for failure to state a claim for relief.

2.      As Applied

The complaint also fails to state a plausible Fourth Amendment "as applied" claim against defendants because, *inter alia*, it contains mere conclusory allegations and is devoid of any factual allegations regarding times, dates, places or persons related to any allegedly unlawful search or seizure of plaintiffs or their property.  *See, e.g. MacPherson*, 2013 WL 6058202, at * 10 (dismissing the plaintiffs' Fourth Amendment challenge to the Old Seasonal Rental Law as applied to them on the basis that they failed to allege "that their properties were unconstitutionally searched" pursuant to that law and, instead, focused only on the law's search provisions "as the basis for their challenge to that statute."); *Palmieri*, 2006 WL 1155162, at * 10 (finding that the allegations in the complaint were insufficient to state a Section 1983 "as applied" claim based on the enforcement of the Town's rental permit ordinance where the complaint "amount[ed] to nothing more than conclusory statements" and the plaintiff alleged "no times, dates, places or persons related to . . . an allegedly unlawful seizure, other than to reference his arrest and imprisonment 'on multiple occasions.'")  Accordingly, plaintiffs' Fourth Amendment "as applied" claims are dismissed in their entirety with prejudice for failure to state a claim for relief.

C.      Fourteenth Amendment

1.      Due Process Claim[9]

_____

[9]  To the extent that plaintiffs assert a cause of action under the Fifth Amendment, those claims are dismissed because the Fifth Amendment "governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors[,]" and plaintiffs "have not named the United States government or any agency or employee thereof as a defendant in this matter."  *MacPherson*, 2013 WL 6058202, at * 16

The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.  Plaintiffs contend, in essence, that the RRP Law deprives them of their property rights by conditioning the use of their rental property upon the waiver of their Fourth Amendment rights.

Under the "unconstitutional conditions" doctrine, "[t]he government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, — U.S. —, 133 S. Ct. 2586, 2594, 186 L. Ed. 2d 697 (2013) (quotations and citation omitted); *see also Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994) (""Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government . . . .")  Thus, the doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz*, — U.S. —, 133. S. Ct. at 2594; *see also United States v. Whitten*, 610 F.3d 168, 194 (2d Cir. 2010) ("Under the 'unconstitutional conditions' doctrine, the government may not do indirectly what it cannot do directly." (quotations and citation omitted)).

Contrary to plaintiffs' contention, the RRP Law does not effectively coerce them into submitting to a warrantlless search or inspection of their property under the threat of criminal penalties or loss of rental income or economic value of their property, as they have the option of refusing to consent to a search by the Town ordinance/code enforcement officer and obtaining a rental permit by either providing the Town with a certification from a licensed professional

(quotations, emphasis and citations omitted).

29

engineer or registered architect, or an independent state certified code enforcement official, or having the Town ordinance/code enforcement officer obtain a search warrant to inspect the premises from a court of competent jurisdiction. *See, e.g. Wisoff*, 2015 WL 6509759, at * 5. As set forth above, the criminal penalties for violations of Article III of the RRP Law set forth in Section 160-49(A) of the Town Code clearly do not apply to a owner's or managing agent's refusal to consent to a search, but, as relevant here, to his or her failure to secure a rental permit in accordance with the RRP Law. Nor does the RRP Law deprive plaintiffs of the rental income from, or economic value of, their rental property because their "refusal to consent to a warrantless inspection would, at most, result in some degree of delay in the issuance of a rental [permit] while the building inspector obtains a warrant[,]" *id.*, or they obtain a certification from a licensed professional engineer or registered architect, or an independent state certified code enforcement official, of their choice. Therefore, the RRP Law does not condition plaintiffs' receipt of a rental permit, or use of their rental property, upon the forfeiture of their Fourth Amendment rights.

Moreover, a condition indirectly placed on a governmental benefit "cannot be unconstitutional if it could be constitutionally imposed directly." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 59-60, 126 S. Ct. 1297, 164 L. Ed. 2d 156 (2006). Thus, since the RRP Law is not facially unconstitutional under the Fourth Amendment, it does not place an unconstitutional condition on plaintiff's property rights in violation of the Fourteenth Amendment. *See Marcavage v. Borough of Lansdowne, Pa.*, 493 F. App'x 301, 307 (3d Cir. Aug. 9, 2012) (unpublished opinion) ("Because we find that the [rental license] Ordinance, on its face, poses no threat to [the plaintiff's] Fourth Amendment rights, we similarly find no intrusion

upon his Fourteenth Amendment rights.)  Accordingly, the branch of defendants' motion seeking dismissal of plaintiffs' Fourteenth Amendment "unconstitutional conditions" due process claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiffs' Fourteenth Amendment "unconstitutional conditions" due process claim is dismissed in its entirety with prejudice for failure to state a claim for relief.

### 2. Equal Protection Claim

#### a. Facial Challenge

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Second Circuit] ha[s] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id.*

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).  "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude[.]" *City of*

*Cleburne*, 473 U.S. at 439, 105 S. Ct. 3249.

The plaintiff in *Palmieri* also alleged that, on its face, the rental permit ordinance of the Town of Babylon, set forth above, violated the Equal Protection Clause of the Fourteenth Amendment because, *inter alia*, it applied solely to non-owner occupied properties. 2006 WL 1155162, at * 7. In rejecting the plaintiff's facial challenge on equal protection grounds, the district court held, in pertinent part:

> "Here, the Town's clear-and-reasonable-interest is the safety of its residents who live in rental properties. The enactment of the Rental Permit Law is rationally related to its purpose of furthering safety. No further analysis of the law is necessary to dismiss Plaintiff's claim that the Rental Permit Law on its face violates the Equal Protection Clause."

*Id.*; *see also MacPherson*, 2013 WL 6058202, at * 15 ("The stated legislative intent of the New Rental Properties Law is to, *inter alia*, protect the health, safety and welfare of the occupants and the neighbors of rental dwellings. . . . Courts have found that towns have a legitimate interest in the safety of its [sic] residents who live in rental properties. . . . Moreover, the enactment of the rental permit laws are rationally related to their purpose of furthering safety. . . . Since the rental permit laws are rationally related to legitimate government interests, the Plaintiff's equal protection facial challenge to the New Rental Properties Law is dismissed." (quotations, alterations and citations omitted)); *Arrowsmith v. City of Rochester*, 309 A.D.2d 1201, 1201, 765 N.Y.S.2d 130 (N.Y. App. Div. 2003) ("The requirement that plaintiffs apply for renewal of certificates of occupancy every five years bears a reasonable relationship to defendant's legitimate goals of promoting public health and safety and maintaining property values[,] . . . and [the municipality's] decision not to impose the same requirement on owner-occupied residential property has a rational basis.") Plaintiffs cite to no case law from this Circuit to the contrary.

Since the legislative intent of the RRP Law is, *inter alia*, to protect the health, safety and welfare of the Town's residents, *see* Town Code, art. I, § 160-1, and the enactment of the RRP Law is rationally related to that purpose, the complaint fails to state a plausible equal protection facial challenge to the RRP Law. Accordingly, the branch of defendants' motion seeking dismissal of plaintiffs' Equal Protection facial challenges to the RRP Law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiffs' Equal Protection facial challenges to the RRP Law are dismissed in their entirety with prejudice for failure to state a claim for relief.

### b.    As Applied

The complaint also fails to state a plausible "as applied" equal protection claim against defendants, as it is bereft of any factual allegations from which it may reasonably be inferred that the RRP Law was intentionally and unreasonably selectively enforced against plaintiffs as opposed to other similarly situated individuals. *See generally Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Deegan v. City of Ithaca*, 444 F.3d 135, 146 (2d Cir. 2006) ("To prove a selective enforcement claim, a plaintiff must demonstrate that laws were not applied to him as they were applied to similarly situated individuals and that the difference was intentional and unreasonable.*")* Accordingly, the branch of defendants' motion seeking dismissal of plaintiffs' Equal Protection "as applied" claims pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure is granted and plaintiffs' Equal Protection "as applied" claims are dismissed in their entirety with prejudice for failure to state a claim for relief.

D.      Unjust Enrichment[10]

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quotations and citation omitted). "The essence of such a claim is that one party has received money or a benefit at the expense of another[,]" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quotations and citation omitted), and "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered[.]" *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695 (N.Y. 1972); *see also Regnante v. Securities & Exch. Officials*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015) ("[I]n order to state an unjust enrichment claim, a plaintiff must show that the defendant actually received a benefit[,] . . . [and the] benefit must be both 'specific' and 'direct.'" (citations omitted)). "Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent[.]" *Paramount Film*, 30 N.Y.2d at 421, 334 N.Y.S.2d 388. "[U]njust enrichment is not a catchall cause of action to be

_____

[10]  Plaintiffs have not opposed or otherwise addressed the branch of defendants' motion seeking dismissal of their unjust enrichment claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

used when others fail[] . . . [and] is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (N.Y. 2012).

The complaint is bereft of any factual allegations from which it may reasonably be inferred that defendants received any specific and direct benefit at plaintiffs' expense in their enforcement of the RRP Law, for which equity and good conscience require restitution. Accordingly, the unopposed branch of defendants' motion seeking dismissal of plaintiffs' unjust enrichment claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiffs' unjust enrichment claim is dismissed in its entirety with prejudice for failure to state a claim for relief.

IV.     Conclusion

For the reasons set forth above, defendants' motion to dismiss plaintiffs' claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent set forth herein and plaintiffs' claims against defendants are dismissed in their entirety with prejudice for failure to state a claim for relief. The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated: July 5, 2017
       Central Islip, New York